BOYCE *v.* STATE

No. 40547 October 7, 1957 97 So. 2d 222

*E. L. Lamar,* Pittsboro, for appellant.

*J. R. Griffin, Asst. Atty. Gen.,* Jackson, for appellee.

HOLMES, J.

The appellant, James J. (Jady) Boyce, was jointly indicted with Alfred R. Huffman and Joe S. Criddle in the Circuit Court of the First Judicial District of Chickasaw County on a charge of grand larceny. The indictment specifically charged that the defendants, on the 12th day of June, 1956, in Chickasaw County, stole at least 25 sacks of ammonium nitrate fertilizer of the value of $3.75 per sack, the personal property of the Houston Fertilizer Association. The defendant, Joe S. Criddle, entered a plea of guilty. The appellant and his co-defendant, Alfred Huffman, plead not guilty. The appellant requested and was granted a severance and was tried separately and convicted and sentenced to a term of five years in the State penitentiary. Hence this appeal.

Among other contentions, the appellant says that the evidence is insufficient to sustain the conviction and that his request for a peremptory instruction should have been granted, and that if mistaken in this, his motion for a new trial should have been sustained upon the ground that the verdict of the jury is contrary to the overwhelming weight of the evidence.

Appellant's conviction rests mainly upon the testimony of his co-indictee, Alfred Huffman, an alleged accomplice, who testified as a witness for the State. He testified in substance as follows: That he had at one time been employed at the plant of the Houston Fertilizer Association but had discontinued such employment prior to the date of the alleged theft which occurred on the

night of Tuesday, June 12, 1956; that he had been approached by the appellant several times prior to the date of the alleged theft about getting some fertilizer from the plant of the Houston Fertilizer Association; that he had bought a car from the appellant and owed him $300 on it; that on Monday evening next preceding the date of the alleged theft, he was milking his cow when the appellant came to him and told him that "tomorrow night was the night" and to be at his house the next night at around 10 o'clock, since he was going to Meridian or Starkville to take an IQ test in connection with his application for a job with the State Highway Patrol; that appellant told him he would give him $1.00 for each sack of fertilizer that they got; that on the next night, which was Tuesday, June 12, 1956, he drove to the appellant's home in his car; that he got there around 10 o'clock and not finding the appellant at home, he waited there in his car on the side of the road about thirty or forty minutes until the appellant came; that when the appellant arrived in his car he was accompanied by his wife and child; that appellant old him that he had to go in his house to change his clothes; that he went in his house and shortly thereafter came out dressed in overalls; that they then drove a short distance to Clifford Griggs' house where they met Joe S. Criddle in a truck; that the three of them got in Criddle's truck; that the appellant drove the truck and they went to the plant of the Houson Fertilizer Association; that it was about 25 minutes to 11 o'clock when they started for the plant in Criddle's truck, and that they arrived at the plant at about 10:50 o'clock P. M.; that they drove around to the north end of the plant where there was a sliding door which was not fastened; that they pushed back the sliding door and that the appellant entered the plant and brought out the fertilizer, which was in sacks of 100 pounds each, and put it on the truck, and that he, the witness, and Criddle stacked it on the truck; that they got 25 or 30 sacks; that they then took the fer-

tilizer to the barn of Wendell Fitzpatrick in Clay County, a distance of about 12 miles; that as they passed Fitzpatrick's house, the appellant blew his horn three times and that after they started unloading the fertilizer in the barn, someone came out and that he "imagined" it was Fitzpatrick but that it was dark and he could not see him; that they got to Fitzpatrick's barn about 12:10 A. M.; that after unloading the fertilizer they returned to appellant's home; that the appellant then paid him, giving him $20.00 and applying $10.00 on his debt to the appellant.

The State's proof further showed that on the morning after the night of the alleged theft there were 80 sacks of fertilizer missing from the plant. The Sheriff of Chickasaw County testified for the State that he investigated the alleged theft and located 43 sacks of fertilizer in Fitzpatrick's barn; that these sacks bore the name of the Houston Fertilizer Association printed or lettered thereon; that one of the sacks bore pencil marks on it. W. C. Henderson, a witness for the State, identified this sack as one on which he had idly made the pencil marks at the plant prior to June 12, 1956, and he further testified that this sack was in the plant before the alleged theft but was missing thereafter. W. J. Linn, a witness for the State, testified that shortly after the alleged theft the appellant came to his place of business and inquired if he had any ferilizer; that he told the appellant that he had some but that it was hard and that he would have some fresh in later. Linn said the appellant came back the next day, or shortly thereafter, and asked about the fertilizer and told him he had been accused of stealing fertilizer and he was innocent but that "he really needed a bill of sale the way they had him hooked up." The State introduced in evidence appellant's written application for a job with the State Highway Patrol wherein he represented that he was in good health.

The appellant's defense was an alibi. He denied categorically the testimony of the alleged accomplice, Alfred Huffman. He testified that he is married and lives with his wife and child on a small farm which he owns, comprising approximately 80 acres, and located a short distance from Houston; that he is in bad health and has had several stomach operations and is physically unable to lift and load 30 sacks of fertilizer, weighing 100 pounds each, on a truck; that he had made application to the State Highway Patrol for employment; that he had been notified by letter from the State Highway Patrol to appear in Starkville on June 12, 1956 at 8 o'clock P. M. for the purpose of taking an IQ test in connection with his application. This letter was properly identified and introduced in evidence. The appellant further testified that the distance from his home to Starkville is about 50 miles; that he left home about seven o'clock on the evening of June 12, 1956, to go to Starkville; that he arrived in Starkville around eight o'clock P. M.; that he intended to take the test and then go to Red Bay, Alabama on business; that he took the test and was afterwards fingerprinted, and that he then left for Red Bay, Alabama between 9:30 and 10:00 o'clock P. M.; that about three miles east of Fulton in Itawamba County he was arrested by Deputy Sheriff Roy Brown between 11 and 11:30 P. M. and charged with speeding and reckless driving, and given a summons to appear before Justice of the Peace Otto Miller at Fulton the next morning at 11:30 o'clock. The original of this summons was introduced in evidence. The appellant further testified that he made a cash bond of $25.00 and was released, and that he left Fulton between 12 and 1:30 o'clock A. M. to go to Red Bay, Alabama; that he returned the next morning, June 13, 1956, and appeared before the justice of the peace and paid a fine; that the distance from Starkville to Fulton is about 90 miles and the distance from Fulton to Red Bay is about 30 miles.

Appellant's wife testified that he was in bad health and weak and had undergone two major stomach operations and was unable to lift anything heavy. She further testified that the appellant left home at about seven o'clock on the evening of June 12, 1956 to go to Starkville to take an IQ test given by the State Highway Patrol and then to go to Red Bay, Alabama on business; that she did not see him again until the next afternoon. She denied that Alfred Huffman came to her house on the night of June 12, 1956.

Paul McKelroy, a member of the Mississippi State Highway Patrol, testified that he was at the sub-station of the State Highway Patrol in Starkville at 8 o'clock on the night of June 12, 1956, and that he gave the IQ tests to 24 applicants for jobs with the State Highway Patrol; that the tests were given in two groups; that he knows of his own personal knowledge that the appellant was present and was among those in the first group who took the test, and that those in this group finished not later than 9:15 o'clock P. M.; that after taking the tests the applicants were fingerprinted; that all of the examinations were concluded at about 10:30 o'clock P. M. The record of appellant's test was introduced in evidence.

The appellant further offered and introduced in evidence as the original court records of the justice of the peace court at Fulton the original summons, the original affidavit, and the original warrant pertaining to his arrest at Fulton. These records showed that the appellant was arrested at Fulton at 11:30 o'clock P. M. on June 12, 1956 on a charge of speeding and reckless driving. These documents so offered as original court records were not objected to by the State, and, in fact, the State's counsel expressly stated that the State made no objection to the introduction of the documents in evidence.

From this relation of the evidence it readily appears that the evidence bearing upon the question of the appellant's guilt or innocence was in complete con-

flict, and we therefore find no error in the action of the trial court in denying the appellant's request for a peremptory instruction.

■■■ We are confronted, however, with the question whether the verdict of the jury is contrary to the overwhelming weight of the evidence. We think it is. The appellant's conviction must rest largely upon the testimony of Huffman, who was an alleged accomplice. **(Hn 3)** Of course, it is well settled under our decisions that a conviction may be sustained upon the uncorroborated testimony of an accomplice, but is is equally well settled that the testimony of an accomplice is to be viewed with caution and suspicion. Cole v. State, 217 Miss. 779, 65 So. 2d 262; Spiers v. State, 91 So. 2d 844. The testimony of Huffman, the accomplice, is without substantial corroboration. The fact that some of the missing fertilizer was found in Fitzpatrick's barn affords no corroboration, since there is no proof that the appellant furnished the information that led to the discovery of the fertilizer. The testimony of Linn that the appellant told him he had been accused of the theft and that he was innocent, and "the way they had him hooked up he needed a bill of sale," while proper to be considered by the jury as an admission against interest, furnishes no more than a circumstance bearing upon the question of the appellant's guilt or innocence. Furthermore, the testimony of Huffman is wholly contradicted, not only by the testimony of the appellant and his wife, but by the court records of the justice of the peace court at Fulton. These records show that the appellant was arrested for speeding and reckless driving at Fulton at 11:30 P. M. on the night of June 12, 1956. It is 50 miles from the appellant's home to Starkville, and 90 miles from Starkville to Fulton. It is conceded by the State that if the appellant was at Fulton, a distance of 140 miles from his home at 11:30 P. M. on the night of June 12, 1956, he could not have been at the scene of the crime at the time of the

commission of the theft. The court records were offered in evidence as the originals and were introduced in evidence without objection by the State. No discredit is cast upon their genuineness and verity other than the effort of the State's counsel in cross-examining the appellant to show that they bore on their face some evidence of erasures and change as to time and date. The appellant denied that he had made any change in the documents, and there was no proof that anyone else had. The deputy sheriff who signed the summons and the justice of the peace before whom the affidavit was lodged were not called as witnesses by the State to question the genuineness or verity of the documents. In view of this documentary evidence and the lack of any substantial corroboration of the alleged accomplice, we are led to the inevitable conclusion that the verdict of the jury is against the overwhelming weight of the evidence and that the cause should be reversed and remanded and another jury permitted to pass upon it.

In view of the fact that the case must be retried, we deem it appropriate to pass upon the appellant's other assignments of error.

 █ The appellant complains that the trial court erred in not sustaining his motion for a mistrial based upon claimed improper cross-examination of the appellant by the State's counsel. After a review of the record, we find no merit in this assignment. As was said in the case of Hawkins v. State, 224 Miss. 309, 80 So. 2d 1, considerable latitude should be allowed in the cross-examination of the accused, and we are of the opinion that the State did not exceed the bounds of proper latitude in this instance.

 █ The appellant further complains that the court erred in admitting over his objection the testimony of the witnesses Henderson and Linn, which we have hereinbefore related. We think the testimony of Henderson was competent as bearing upon the identity of the stolen prop-

erty. The testimony of Linn was, in our opinion, competent as an admission of the appellant against his interest and was proper to be considered by the jury for what it was deemed by the jury to be worth. We are accordingly of the opinion that these assignments are not well founded.

It follows from what has been said that the judgment of conviction should be and it is reversed and the cause remanded for a new trial.

Reversed and remanded.

*Roberds, P. J.,* and *Lee, Arrington* and *Ethridge, JJ.,* concur.