BOYCE *v.* STATE.

No. 41602          October 10, 1960          123 So. 2d 452

*Robert B. Smith,* Ripley; *E. L. Lamar,* Pittsboro, for appellant.

*G. Garland Lyell, Jr.,* Asst. Atty. Gen., Jackson, for appellee.

Holmes, J.

The appellant was jointly indicted with Alfred R. Huffman and Joe S. Criddle in the Circuit Court of the First Judicial District of Chickasaw County on a charge of grand larceny. The indictment charged that the defendants, on the night of June 12, 1956, in Chickasaw

County, stole at least 25 sacks of amonium nitrate fertilizer of the value of $3.75 per sack, the personal property of the Houston Fertilizer Association. The defendant Joe S. Criddle entered a plea of guilty. The appellant and his codefendant, Alfred Huffman, entered a plea of not guilty. Later, the said Alfred Huffman changed his plea of not guilty to a plea of guilty, and was put on probation, and testified as a witness for the State. The appellant requested and was granted a severance and was tried separately at the October 1956 term of the court and was convicted and sentenced to serve a term of five years in the State Penitentiary. He appealed from that conviction to the Supreme Court and the Supreme Court reversed the judgment of conviction, saying: "In view of this documentary evidence and the lack of any substantial corroboration of the alleged accomplice, we are led to the inevitable conclusion that the verdict of the jury is against the overwhelming weight of the evidence and that the cause should be reversed and remanded and another jury permitted to pass upon it." Boyce v. State, 231 Miss. 847, 97 So. 2d 222.

The appellant was again tried at the October 1959 term of the court and was convicted and sentenced to serve a term of five years in the State penitentiary, and he appeals from this judgment of conviction.

The main contention of the appellant on this appeal is that the evidence is insufficient to support the conviction, and that, therefore, the court erred in denying his request for a peremptory instruction. This contention makes necessary a brief review of the evidence.

There is no dispute that the larceny occurred on the night of June 12, 1956, between eleven o'clock P.M. and midnight. The conviction of the appellant rests mainly upon the testimony of his coindictee, Alfred Huffman, an alleged accomplice. Huffman testified that he was a former employee of the Houston Fertilizer Association; that he had been approached by the appellant on several occasions prior to the date of the alleged theft

relative to getting some fertilizer from the Houston Fertilizer Association; that on the evening before the theft he was working at Charlie Davis' place milking cows and the appellant came to him and told him that "the next night would be the night", and told him to come to his house the following Tuesday night, June 12, 1956, and to be there between 10 and 10:30 o'clock P.M.; that the appellant agreed to give him $1.00 a sack for all the fertilizer that he got; that he went to the appellant's house the next night, arriving there between 10 and 10:30 o'clock PM., and not finding the appellant there, he waited on the outside in his car; that the appellant shortly thereafter arrived accompanied by his wife and child; that the appellant went in his house to change his clothes and came out dressed in overalls and a blue shirt, and that he and the appellant got in the appellant's car and drove to Clifford Griggs' house where they met Joe S. Criddle sitting in his truck; that the appellant then called to him and told him to come on and get in the truck and that the three of them, that is, the appellant, Huffman and Criddle, got in Criddle's truck and started for the Houston Fertilizer Association plant; that the appellant was driving and when he reached the plant he backed the truck up to the door; that he, Huffman, and Criddle got the fertilizer out of the plant and that the appellant stacked it; that they got at least 25 or 30 sacks; that they then drove to Wendell Fitzpatrick's place in Clay County, a distance of 10 or 12 miles from Houston, and unloaded the fertilizer in Fitzpatrick's barn; that on their return the appellant gave him, the said Huffman, $20.00 and withheld $10.00 to apply on a debt which Huffman owed to the appellant for a car; that he, Huffman, on being jointly indicted for the theft with the appellant and Criddle, first denied his guilt by entering a plea of not guilty, and later changed his plea to a plea of guilty and was placed on probation, and thereafter appeared as a wit-

ness for the State. Huffman further testified that they reached Fitzpatrick's barn about midnight.

J. H. Alexander, the Sheriff and Tax Collector of Chickasaw County, called as a witness for the State, testified that the theft of the fertilizer was reported to him and he made an investigation of the crime and made a search for the fertilizer. He said that he went to Clay County to Wendell Fitzpatrick's barn and there he found 43 sacks of amonium nitrate in the barn and 6 sacks of the fertilizer in the edge of the woods about one-half mile from Fitzpatrick's home; that the fertilizer was identified as belonging to the Houston Fertilizer Association.

W. J. Lynn, a witness for the State, testified that he recalls having heard about the theft of the fertilizer and that sometime after that the appellant came to his store and told him that he wanted some amonium nitrate, and that he told appellant he had some but it was old and hard and he would have some more in a few days. Lynn further testified that shortly after that the appellant came back to him and told him he was being accused of breaking in at the Houston Fertilizer Association plant and it looked like what he needed was a bill of sale.

The appellant's defense was an alibi. The proof for the defense shows without contradiction that the appellant made application for a job as a highway patrolman; that the appellant was notified by letter from the State Highway Patrol Office to appear at Starkville on the night of June 12, 1956 at 8 o'clock P.M. for the purpose of taking an examination and test in connection with his application for a job. Highway Patrolman Paul McKelroy identified the letter and testified that it was his duty to give the I.Q. tests to applicants for the job of Highway Patrolman. He identified the letter that had been sent to the appellant and the letter was introduced in evidence. The letter notified the appellant to appear in Starkville for the purpose of taking

a written examination as an applicant for a position with the Mississippi Highway Patrol. McKelroy testified that he recalls that the appellant was present on that occasion and took the examination. He further testified that there were 24 applicants and that it was necessary that he give the examination in two groups, and this he did. He testified that according to his recollection the appellant was in the first group and this group finished about 9:15 o'clock P.M.; that after completing the written examination, it was necessary that the applicants be finger printed. He said that the examinations were over about 10:30 or 10:45 o'clock P.M. and he left about 11 o'clock P.M.

The proof for the defense further shows that after the appellant completed the examination he left for Red Bay, Alabama, and was arrested at Fulton, Mississippi, on a charge of reckless driving and speeding. The officer who made the arrest, Deputy Sheriff Roy Brown of Itawamba County, testified that the arrest was made at about 11:30 P.M. and that the appellant told him at that time that he had been to Starkville where he had taken an examination as an applicant for the job of Highway Patrolman, and that he was on his way to Red Bay, Alabama, to attend to some business. Deputy Sheriff Brown testified that after arresting the appellant he gave him a ticket or summons which directed him to appear before Otto Miller, Justice of the Peace, at Fulton on June 13, 1956, at 11:30 o'clock A.M., to answer the charge of reckless driving and speeding. The summons or ticket was identified by Deputy Sheriff Brown and appears to have been signed by Brown under date of June 12. Brown testified that he took the appellant before Justice of the Peace Otto Miller and made an affidavit against him for reckless driving and speeding. The affidavit was identified by Deputy Sheriff Brown and was introduced in evidence and appears to have been sworn to by Brown on June 13, 1956. Brown testified that it was his practice when the violator was an out of state or out of county

person to date his affidavit the same date as the date of his appearance. The affidavit was dated June 13, 1956 and the summons directed appellant to appear before the Justice of the Peace on June 13, 1956. The hour of appearance as set forth in the summons appears to be 11:30 A.M. It is claimed by the State, however, that this hour has been changed and that it should read 11:30 P.M., June 13, 1956. It may be said parenthetically that it is incredible that the appellant would have been summoned to a hearing at 11:30 o'clock at night, but that it is more reasonable to conclude that the summons read 11:30 A.M. and not 11:30 P.M.

An examination of the summons shows that it is impossible to determine whether or not the date June 12 on the summons was changed from June 13. Brown testified that there had been some changes apparently in the summons, but he did not know when or by whom they were made. Brown was confronted with a statement which he gave to the sheriff in which he said that on the night of June 13, 1956, around 11:30 P.M. he stopped a Ford car headed west on Highway 78 in Itawamba County about two or three miles east of Fulton, which was being driven by a man named James J. Boyce. Brown admitted he gave the statement. He said, however, that he had no independent recollection with reference to the dates. There is no proof that any actual change had been made in the summons or in the affidavit other than that which may be derived from a mere inspection of the two documents and speculation as to changes made thereon. Of course, the material date bearing upon the question of the guilt or innocence of the appellant is June 12, 1956. Brown's testimony that he arrested the appellant for reckless driving and speeding at 11:30 o'clock P.M. is uncontradicted. The fact that that was the date of the commission of the offense is conclusively established we think by a reference to the affidavit. The affidavit charges that the appellant "did wilfully and unlawfully speeding and reckless driv-

ing, D/L No. 1168139, tag No. Chickasaw County 175-310, *at* 11:30 *o'clock P.M., June* 12, 1956.'' (Emphasis ours)

Thus there can be no dispute about the fact that the date of the commission of the traffic violation appears in the affidavit as June 12, 1956. It is undisputed also that the appellant was arrested by the deputy sheriff at 11:30 o'clock at night, and the affidavit itself shows that the alleged traffic offense was committed on June 12, 1956.

The appellant's wife testified that on the evening of June 12, 1956, her husband left Houston to go to Starkville to take the I.Q. tests in connection with his application for a job as State Highway Patrolman. She further denied that Huffman appeared at her house that night. She said that she did not see her husband again until he returned the next afternoon. She further testified that her husband was not a well man and had undergone two serious stomach operations and that the last one was performed in October 1954, and that since that time he had been in and out of the hospital a number of times, and was weak and unable to lift anything heavy.

A review of the testimony in this case shows that the appellant's conviction rests mainly upon the testimony of Huffman, an alleged accomplice, and that it is without substantial corroboration. It is well settled under our decisions that a conviction may be sustained upon the uncorroborated testimony of an accomplice, but it is equally well settled that the testimony of an accomplice is to be viewed with caution and suspicion. Cole v. State, 217 Miss. 779, 65 So. 2d 262; Spiers v. State, 229 Miss. 663, 91 So. 2d 844. The solution of the question as to the guilt or innocence of appellant revolves around the date of the appellant's arrest at Fulton, Mississippi, at 11:30 o'clock P.M. According to the appellant, this was the same night that he had taken his I.Q. test and was later arrested by the deputy sheriff at Fulton and given a summons to appear the next day before the justice of the peace at 11:30 o'clock A.M.

The theft of the fertilizer occurred around 11:30 o'clock or midnight on June 12, 1956. The proof shows that it is 50 miles from Houston to Starkville, and 90 miles from Starkville to Fulton, or, in other words, it is 140 miles from the appellant's home to Fulton. It is obvious, of course, that if the appellant was in Fulton at 11:30 o'clock on the night of June 12, 1956, and the theft was committed at Houston between 11:30 o'clock and midnight of the same night, the appellant could not have possibly participated in the theft.

We think that the affidavit charging that the offense of speeding and reckless driving was committed on June 12, 1956, affords conclusive evidence that the date of the arrest was June 12, 1956. We find in the evidence no substantial corroboration of Huffman, the alleged accomplice, upon whose testimony this conviction rests.

We are, therefore, of the opinion that in view of the documentary evidence and the lack of any substantial corroboration of the alleged accomplice, the proof for the State falls short of being sufficient to establish the guilt of the appellant beyond every reasonable doubt. It is accordingly our conclusion that the appellant's request for a peremptory instruction should have been granted. The judgment of conviction is therefore reversed and the appellant discharged.

Reversed and appellant discharged.

*Hall, P.J.,* and *Lee, Arrington* and *Ethridge, JJ.,* concur.