## NICHOLS *v.* STATE.

(Division B. Nov. 11, 1935. Suggestion of Error Overruled Nov. 25, 1935.)

[164 So. 20. No. 31968.]

Broom & Shipman, of Jackson, for appellant.

272

W. D. Conn, Jr., Assistant Attorney-General, for the state.

Argued orally by **S. C. Broom**, for appellant, and by **W. D. Conn, Jr.**, for the state.

**Ethridge, P. J.**, delivered the opinion of the court.

The appellant, Sam Nichols, was indicted with Willie O'Neal, Jack Woodcock, Frank Baygents, and F. M. Lee, for the burglary of a store building of P. P. Williams Company, in Hollandale, Mississippi, and, after a severance, appellant was tried, convicted, and sentenced to serve a term of five years in the state penitentiary. The indictment charges that the above-named parties ''did then and there break and enter, with the felonious intent, the goods and chattels in said store building, then and there being found, then and there unlawfully, feloniously and burglariously to take, steal and carry away, and then and there in said store building thirteen cases of cigarettes, each of the value of $68.40, of the total value of $889.20 of the property of P. P. Williams Company, a corporation.''

It appears that on the night of the alleged burglary three men appeared in Hollandale and first held up and bound Guy Clower, a night watchman for the Hollandale Cotton Oil Company, and were informed by Clower that Mr. Hall was night watchman for the P. P. Williams

Company and did not have the keys, and that shortly thereafter Mr. Hall came along, and he was likewise bound, and he and Clower were placed under the platform; that a fourth man drove up in a car and they proceeded to burglarize the store, leaving one of their number to guard Clower and Hall. That a little later Clower and Hall were moved inside the building, and were there gagged and bound, and the burglars then left. That about twenty-five minutes after that, Clower unloosed his bonds and also unloosed Hall's bonds.

Clower could not identify any person involved in the burglary, but he testified that there were four men in it, and from where he was bound under the platform he could not see their faces, but he said there were four men, and that one of them was left with him and Hall, and that they were afterwards moved into the building. Except for his failure to identify the parties, his testimony was substantially the same as that of Hall and O'Neal, one of the burglars who was introduced as a witness for the state. Hall testified for the state and identified Sam Nichols as being one of the parties. We quote some of his testimony, for the reason that it is alleged that without the testimony of O'Neal there would not be sufficient testimony to convict, and that the conviction really stands upon the testimony of an accomplice, an impeached witness, who was unworthy of belief.

"Q. Where was Sam Nichols when you went to look at him? A. In the Hinds county jail. . . .

"Q. They took you into the hall and somebody opened the door and brought out a man and said 'This is Sam Nichols.' A. I do not think they called his name.

"Q. Didn't you tell us the deputies told you their names? A. I didn't know their names.

"Q. Didn't you tell us that just now? A. I saw him before his name was mentioned.

"Q. What did they say when they brought him out? A. They asked me if he answered the description. . . .

"Q. You didn't positively identify him at that time

because you couldn't? A. I told Warren Ferguson this man.

"Q. What did you tell Warren Ferguson—he is dead and gone? A. I would compromise anything on my word. I would put my head on the chop block first—he is one of the men. . . .

"Q. It is a fact that every time the officers presented you with a man you said 'that is the man?' A. Yes, sir.
. . .

"Q. You furnished the general description, then the officers went out and picked up four men meeting that description, then you went and identified them, all four of them as being the men who committed the burglary, without a single exception? That is true? A. Yes sir.
. . .

"Q. That is all you know about it, they brought these men to you and you identified them. That is all there is to that? A. Yes sir.

"Q. Had it not been for O'Neal's confession, you wouldn't have been certain about your identifications, as an honest man? A. Yes sir. I had a better opportunity to see Woodcock than any of the rest. . . .

"Q. If it hadn't been for O'Neal's confession you would have been afraid of your identification? A. What I was trying to do was to describe them as near as I could, yes sir. . . .

Q. You never got a description of Sam Nichols—you never had an opportunity to see his face when you flashed the light the first time, he wasn't there? A. No sir, not until we went into the warehouse under the lights."

O'Neal, the accomplice, testified in detail as to the arrangement of the plot to rob the store, saying, in substance, that Baygents, Nichols, and Woodcock, and the witness entered into an agreement in Jackson, Mississippi, to proceed to Hollandale and steal the cigarettes; that when they arrived there they held up and bound Clower and Hall leaving them so bound and gagged while they got the cigarettes; that they went to some place in

Madison county about thirteen miles from Jackson where the cigarettes were unloaded and he and Baygents stayed with them while Sam Nichols and Jack Woodcock went to town to call up Lee to come and get them, and they paid O'Neal, for his part in it, the sum of ninety-five dollars, and he stated that information as to the cigarettes being at Hollandale was conveyed to him by Sam Nichols.

A number of witnesses were introduced who testified that they would not believe O'Neal on oath. O'Neal had been convicted and sentenced to serve fifteen years in the penitentiary for a bank robbery, and had been twice before convicted and sentenced to serve terms of four years each, and also was convicted and sentenced to serve three years for another crime.

The other persons named as being present at the burglary testified that they were not there, and that there was no truth in O'Neal's statements.

When Sam Nichols was being examined as a witness, he was asked if he had not had a photograph made with the other two persons jointly indicted. He, at first, stated that he had no recollection of so doing, and that he did not know O'Neal and Baygents, but finally admitted that he may have seen them.

Witnesses were called in rebuttal who testified that they had seen the photographs of O'Neal, Nichols and Baygents together, one holding up his hands, and the other two having him covered with guns, representing a "hold up" scene. The photographs were never produced; neither was the person who made them introduced as a witness to testify as to their being together in a group, and as to the correctness of the photographs. This was assigned as error.

The appellant requested and was granted the following instruction: "The court charges the jury on behalf of the defendant, that the witness, Willie O'Neal, is what is termed in the law as an accomplice, and the court further charges you that, in considering the testimony of

an accomplice, you are to weigh it with great care, caution, suspicion and distrust.''

The following instruction requested on behalf of the appellant was refused: ''The court instructs the jury, on behalf of the defendant in this case, that the witness, Willie O'Neal, is what is known in law as an accomplice, and the court charges you that, in considering the testimony of an accomplice, you are to weigh it with great care, caution, suspicion and distrust, and if he has successfully been impeached by unimpeached witnesses, and is uncorroborated, then you are instructed to disregard his testimony entirely.''

We have carefully examined the evidence, and we think it is sufficient to sustain the conviction, and that it. does not depend entirely upon the testimony of an uncorroborated accomplice who has been impeached by an unimpeached witness. The testimony of Hall, alone, would perhaps justify the conviction, but, when taken in connection with the testimony of O'Neal as to what occurred at the place of the burglary, they are in substantial accord. Both of them identify the parties as being there engaged in the business of burglary.

The rule that a conviction on unsupported testimony of an accomplice who has been successfully impeached by an unimpeached witness is the strongest testimony obtainable against the evidence is not applicable here. The rule in such cases is that the court will not permit a conviction to stand on the uncorroborated testimony of an accomplice, whose testimony is contrary to unimpeached witnesses, and is improbable on its face, and where such accomplice's testimony has been impeached by many unimpeached witnesses. Where there is evidence other than that of an accomplice, and it substantiates his testimony in essential and important details, the jury are not authorized to disregard it, unless they believe, from the whole of the evidence, that he has testified falsely.

The instruction above set forth which was refused re-

quired the jury to disregard the testimony if they believed O'Neal had been successfully impeached by an unimpeached witness, and that his testimony was not corroborated.

In no case is the jury required to disregard the testimony of an accomplice, although impeached. They are to consider the question as to whether, in all probability, his testimony is false, and if they believe that he has been successfully impeached, they may then, after so finding, disregard his evidence. The jury's function is to decide questions of guilt or innocence upon all of the evidence; they being the judge of what is true and what is false, subject to review by the trial judge who may, if he believes the conviction is against the overwhelming weight of the evidence, grant a new trial.

This court, in many cases, has held that the evidence of an accomplice, if believed, and who has not been successfully impeached, is sufficient to sustain a conviction without the aid of other evidence. Where, as in the case at bar, the evidence of an accomplice is supported by that of other witnesses, neither the court nor the jury have the right to disregard it, and it is sufficient where it amounts, in the judgment of the jury, to sufficient probability to remove all reasonable doubt of guilt.

We find no reversible error in the record, and the judgment of the court below will be affirmed.

Affirmed.