COLE *v.* STATE.

June 8, 1953

No. 38731      34 Adv. S. 24      65 So. 2d 262

*Roy E. Johnson, Smallwood, Sumners & Hickman,* for appellant.

*Geo. H. Ethridge,* Assistant Attorney General, for appellee.

ETHRIDGE, J.

Appellant, W. B. Cole, alias W. B. Boyd, was convicted in the Circuit Court of the First Judicial District of Panola County of grand larceny, for the theft of three automobile tires and an electric power saw, belonging to the Short Planting Company, a partnership. The only evidence in the record connecting appellant with the theft was the testimony of an alleged accomplice, Willie Hightower, and a confession by appellant.

The theft apparently occurred around January 24, 1952, in the nightime at approximately 10:00 p. m. Billy Shepherd, assistant manager of the Short Planting Company, testified that he lived on the plantation and within seventy-five feet of the general repair shop building of the plantation; that "sometime in January" and on a Saturday afternoon the tires and saw which were later stolen were in the shop, but on Wednesday or Thursday of the following week he again worked in the shop and they were gone; that no one had been authorized to remove this property and that he had not seen it since that time. He said that Charles Hudson, a colored blacksmith, worked in the shop most of the time; that Willie Hightower would help him from time to time; that appellant had worked in the shop for two days during the week preceding the time the property was missing; that he had seen appellant hanging around the shop, and that on one occasion appellant came after some lumber; that appellant had been living on the place only a short time, but had been with Mr. Short for five or six years.

Shepherd testified that on a Wednesday or Thursday night following the Saturday at which he had last seen this property, he heard a noise outside around ten or eleven o'clock, so he ran out the back door and shot his shotgun toward the noise; that he turned the floodlights on and "heard some mules running," heard a door slam but did not hear any person running. He discovered the tires were missing two days after that occurrence. None of Shepherd's testimony connects appellant with the crime. He simply said that appellant had been around the shop on several occasions. He also told of the sounds outside which he heard one night, but does not connect appellant with them.

Willie Hightower testified that on January 24th he was working for Shepherd on the plantation driving a truck; that on that night, Thursday, between nine and ten o'clock p. m. he and appellant went over to the plantation shop. Hightower said that appellant had solicited him four times to help him steal the tires and that he agreed on the fourth occasion; that one day in the shop appellant asked the witness to help him do this, saying that he would pay him something to do it; that the witness and appellant drove to the back of the barn in a pickup belonging to appellant or his father; that appellant filed the latch or lock on the shop and that they stole four tires and the electric saw. Hightower said that appellant stated he wanted to put the tires on his pickup and wanted the saw for his father; that after they left the shop they heard a shot up at the house, but they were then down under the hill; that they loaded the property in the pickup, and appellant let Hightower out at his house and appellant drove on with the tires and saw; and that appellant said he would give the witness something to help him but he never paid him. Hightower admitted that he had recently confessed to stealing some cattle along with his brother; that his brother had driven down from Chicago in his car and after the cattle theft had driven back to that

city. Hightower said that appellant had nothing to do with any cattle theft; that he had told the sheriff of appellant's implication in the theft from the shop after he had been arrested for cattle stealing; that his brother had come down from Chicago after he and appellant had stolen the tires and saw, and that the cattle theft occurred about two weeks thereafter; that when appellant was arrested and brought to the jail, he told the witness in the presence of the sheriff that Hightower should not have framed him concerning the theft. Hightower testified that appellant and his father had come over to the shop one time to get some lumber, and that was the time when appellant first asked the witness to help him steal the tires; that when appellant asked him to do that Charlie Hudson was in the shop and was close enough to have heard the conversation. Charlie Hudson was not offered as a witness. Appellant did not know where the tires or saw were.

The State then introduced a written confession signed by appellant. The sheriff and E. J. Ainsworth, special cattle investigator, testified that it was free and voluntary. Appellant testified that although he was not physically assaulted, the officers had threatened to beat him up and had interrogated him regularly over a period of several days before he signed the confession; and that he was in fear and was intimidated into making the confession. The trial judge found that it was voluntary and admitted it in the evidence. The confession was typewritten in question and answer form. It stated that appellant and Hightower went over to the shop late one night and got the tires and saw; that someone turned on a light and shot out that way, but he and Hightower had left and were going toward the truck about 100 yards down in the pasture at the time; that they put the stolen property in the truck and drove down the road, where appellant let Hightower out; that appellant then drove on over to a gravel pit and hid the tires near a colored school, close by a little cedar tree; that appellant went

there about a week later and the tires and saw were still under the tree, but when he took the sheriff and Ainsworth out there on February 8th· they were gone and apparently someone had taken them.

E. J. Ainsworth testified that he had·the confession of appellant typewritten and that it was read back to appellant before he signed it; that he had talked to appellant several times before he confessed; that appellant had carried him and the sheriff out in the country and took them to a place where he said the tires and saw were hidden, but that they were not there. Sheriff Darby testified that appellant had guided him and Ainsworth out near a gravel pit where appellant said he had hidden the stolen property under a little cedar tree, which was 200 to 300 yards off the road; that under the tree ''the grass was mashed down like there had been something there,'' but he could not get any idea as to what the objects might have been. He said that when he first brought appellant into Hightower's presence, appellant asked Willie why he wanted to lie about him and that he, the sheriff, told appellant to hush up; that he had interrogated appellant off and on for several days before he confessed.

Appellant testified and denied any connection with any theft of tires or saw from the shop. He said that he gave the confession after he had been threatened by the sheriff with a beating if he did not give it, and that the confession was not true; that what was written down and read in court was what he said, but that he could not read it; that he made up the tale because he had been told that his boss man would get him out of jail if he would confess; and that on the night of the theft he was at home. Appellant said that there were no tires or saw out by any cedar tree as far as he knew; that he had never talked with Hightower about stealing the tires; that he lived with his mother and father, and was thirty years old; that he made the statement in his confession about hearing the shot when he was in the pas-

ture because the officers said that was what Willie told them; that he stayed in jail from Wednesday to Monday before he was released on bond; that he signed the confession on the Friday .after his arrest; and that up to that time he had consistently denied the theft (the officers confirmed this). Appellant's father stated that he was not allowed to see appellant while he was in jail; and his mother said that appellant was at home on the night in question. Apparently appellant had no prior criminal record, because the State introduced no evidence of prior convictions.

Since there was a conflict in the evidence on the issue of the voluntariness of the confession, we affirm the finding of the trial court that it was voluntary and therefore admissible in evidence. Hence appellant's conviction is based upon the testimony of the accomplice Hightower, which is wholly uncorroborated by any other evidence except the confession, and upon the confession. Although reluctant to disturb the verdict of the jury, we have concluded, after a careful examination of the evidence, that the testimony of the accomplice and the confession are so improbable, unreasonable and contradictory on this record as to be wholly insufficient for us to be able to say that appellant's guilt was proved beyond a reasonable doubt.

■■■ This Court has adopted a rule that a defendant can be convicted on the uncorroborated testimony of an accomplice, but it has carefully restricted the scope of that doctrine by holding that such uncorroborated testimony should be viewed with great caution and suspicion, and that it must be reasonable and not improbable or self-contradictory, or substantially impeached. Nichols v. State, 174 Miss. 271, 164 So. 20 (1935); Creed v. State, 179 Miss. 700, 176 So. 596 (1937).

Not one but a number of aspects of Hightower's testimony, when considered together, make it an exceedingly improbable and unreasonable story. Hightower is a confessed cattle thief. Yet he said that appellant had to

ask him four times before he agreed to help steal the tires. He stated that on one occasion when appellant talked to him about stealing the tires, Charlie Hudson, the shop's blacksmith, was nearby in the shop and could have heard their conversation, but Hudson was not introduced as a witness to confirm or deny this. Hightower said that appellant broke the lock on the shop by filing it, but there is not an iota of testimony by Shepherd or anyone else to indicate that the lock had been filed or broken. Hightower testified that appellant agreed to give him something for helping him, but that he had received nothing. It is somewhat unlikely that Hightower would have undertaken the onerous task of stealing from his employer, without also expecting to get something reasonably definite out of it. Coupled with this is the unlikely circumstance that Hightower stated that appellant let him out of the truck and appellant took the loot away in the truck without Hightower helping in the disposition of the stolen goods. Appellant's time sequence concerning when his brother, who he said helped him steal cattle, was down from Chicago, with reference to the theft from Short, is somewhat hazy and is a suspicious circumstance. Hightower said that after the theft he heard a gunshot but that they were some piece away then and down under the hill. Shepherd, the plantation's assistant manager, said that he heard a door shut, and "heard some mules running," but heard no person running. There is no evidence that the thieves used mules or horses; Hightower said they had a pickup truck. These and other improbable, unreasonable and contradictory circumstances in the testimony of Hightower, a confessed thief, when viewed with great caution and suspicion under the above-stated rule, rendered it insufficient to support the conviction beyond a reasonable doubt.

And we think that similar deficiencies exist with reference to the confession. We assume that it was voluntary. Appellant's statement in the confession that he

hid the tires and saw under a little cedar tree nearby a colored school is inconsistent with the testimony of Hightower that appellant was eager to get the tires for his pickup truck and the saw for his father's use. Instead of taking them where they could be used for the purposes which Hightower said that appellant wanted them for, the confession stated that appellant took them to a place under a tree near a school where they were likely to be discovered by others, and the sheriff, in his testimony, frankly said that he could not determine what, if anything, had previously been lying under the cedar tree. In short, the circumstances narrated in the confession, and appellant's protestation of innocence before and after giving it, when considered along with the extremely improbable tale of appellant hiding the stolen goods under the cedar tree by the school and some unknown person taking them, and when considered along with Hightower's improbable and contradictory testimony, render the confession wholly inadequate to support the conviction beyond a reasonable doubt.

We think that the motion for a new trial should have been sustained because the conviction is against the great weight of the evidence. It is not often that a trial or appellate court is justified in setting up its judgment against that of the jury on an issue of fact, but this case is one of that character. Compare Jefferson v. State, 52 So. 2d 925 (Miss. 1951); Dickerson v. State, 54 So. 2d 925 (Miss. 1951). The evidence of the defendant's guilt is of such nature as to create a serious doubt in our minds. It is the duty of the court to see that a defendant is not convicted and punished unless his guilt is shown beyond a reasonable doubt. The above-stated facts indicate the weaknesses in the State's case as presented on this appeal. We think that another jury should be permitted to pass upon the question of defendant's

788

guilt, so the case is reversed and remanded for a new trial.

Reversed and remanded.

*McGehee, C. J.,* and *Lee, Kyle* and *Arrington, JJ.,* concur.