220 So.2d 276 (1969)
Jerry HUTCHINS
v.
STATE of Mississippi.
No. 45186.
Supreme Court of Mississippi.
March 10, 1969.
*277 Noel W. Buckley, Jackson, for appellant.
Joe T. Patterson, Atty. Gen., by Guy N. Rogers, Asst. Atty. Gen., Jackson, for appellee.
INZER, Justice:
Appellant, Jerry Hutchins, was indicted, tried and convicted in the Circuit Court of Newton County for the crime of burglary. He was sentenced to serve a term of seven years in the State Penitentiary. From that sentence he appeals to this Court. For the reasons set out below we reverse and remand for a new trial.
The proof on behalf of the state established that between the hours of 5 P.M. on Friday, March 15, 1968, and 8 A.M. Saturday, March 16, 1968, the Hickory Branch office of the Newton County Bank was broken into, a hole was burned in the vault door and a substantial amount of money was feloniously carried away.
The only evidence offered by the state that connected the appellant with the crime in any way was the testimony of two witnesses, Bobby Gene Smith and O'Neal Buddy Goodman, who admitted participating in the burglary or the planning thereof. The state did not attempt to corroborate the testimony of either of the witnesses by any physical or circumstantial evidence.
Bobby Gene Smith testified that he was present at the planning session in Jackson when the preliminary plans were made to burglarize the Hickory branch office. Smith stated that he had known appellant most of his life and that he was present and participated in the making of the plans. Smith was also present when a trip to Hickory was undertaken the next night in order to "case" the branch office. They left two of their co-conspirators in Hickory to carry out this purpose and returned to Jackson. He also placed the appellant as a participant in this exploratory trip. Smith was driving the car on this venture and back in Jackson ran afoul of the law and was incarcerated. Unable to return that night to retrieve his companions he was also unable to participate in the burglary and did not purport to have any direct knowledge of the event or circumstances thereof, including who carried out the crime. Smith testified also as to the participation of the State's other witness, Goodman, at both of these preliminary stages of the crime.
It was brought out that he had been convicted of grand larceny and several misdemeanors and on cross examination he admitted to having been a narcotics user. Smith also admitted that in 1966 there had been some "friction" between him and the appellant over the sale of an automobile. He denied, however, that his testimony was offered with any expectation or hope of leniency.
The other witness offered by the state was O'Neal Buddy Goodman, a native of Alabama, who admitted on direct examination that he had previously been convicted of burglary and had been a narcotics addict for a "pretty good period." He also testified as to appellant's participation in the planning session and the "casing" trip to Hickory. There were no material differences in the testimony as to these occurrences between the version offered by Smith and that of Goodman.
Goodman testified that on March 15, 1968, the appellant and the other co-felons *278 left Jackson by car and arrived in Hickory about 11:30 p.m. He remained in the car as a lookout while the appellant and the others broke into the bank building. He testified to seeing flashes from the cutting torch before the appellant and the others emerged an hour and a half later with the loot.
On cross examination the extent of Goodman's dependence on narcotics was vividly brought out. He stated that he had been given drugs by a doctor that morning and was under the influence while testifying. If he is without drugs for 12 to 18 hours he experiences severe withdrawal effects. He also revealed that after he was arrested he was not given drugs until after he had given a statement to the authorities.
The first defense witness was a medical doctor who was qualified as an expert on drug addicts. His testimony had the effect of an impeaching witness who testified that an addict's reputation for truth and veracity was poor and could not be believed under oath. On cross examination the doctor stated that he had not examined Goodman and the testimony he had given was concerning addicts in general.
The only other evidence offered by the defense was an alibi established by seven witnesses. These witnessees testified that they had seen the appellant at various nightclubs in Jackson on the night of the burglary. The testimony was such, that if true, it would have been impossible for appellant to take part in the burglary in Hickory. The state did not impeach or contradict any of the testimony of these witnesses by cross examination or otherwise.
Appellants assign several grounds for reversal of this case, but the principal assignment is that the verdict of the jury is against the weight of the credible evidence and that the trial court was in error in failing to sustain his motion for a new trial. We are of the opinion that this motion was well taken and should have been sustained.
There is no question that we follow the common law rule that the uncorroborated testimony of an accomplice will support a verdict of guilty. However, this is not an unrestricted rule. We said in Cole v. State, 217 Miss. 779, 65 So.2d 262 (1953).
This Court has adopted a rule that a defendant can be convicted on the uncorroborated testimony of an accomplice, but it has carefully restricted the scope of that doctrine by holding that such uncorroborated testimony should be viewed with great caution and suspicion, and that it must be reasonable and not improbable or self-contradictory, or substantially impeached. Nichols v. State, 1935, 174 Miss. 271, 164 So. 20; Creed v. State, 1937, 179 Miss. 700, 176 So. 596. (217 Miss. at 785, 65 So. at 264).
We have also held that the uncorroborated testimony of an accomplice may be so thoroughly impeached that it amounts to no substantial evidence at all. See Pegram v. State, 228 Miss. 860, 89 So.2d 846 (1956).
In this case the state's chief witness admitted that he had been convicted of a previous felony and plead guilty to the same charge upon which appellant was being tried. He had not been sentenced on this charge at the time he testified. He admitted that he was a "dope" addict and was under the influence of drugs when he was on the witness stand. He was also impeached by the unimpeached testimony of seven alibi witnesses. In addition thereto, he was impeached by the expert testimony of the medical doctor to the effect that the testimony of a drug addict is at the best most unreliable.
We are of the opinion that the motion for a new trial should have been sustained in this case because the uncorroborated testimony of the accomplice, Goodman, has been impeached to the extent that the conviction is against the great weight of the evidence. It is not often that we are justified in setting up our judgment against that of the jury on an issue of *279 fact, but the evidence of appellant's guilt is such of a nature as to create a serious doubt in our minds whether the state has met the burden of proving guilt beyond a reasonable doubt. Under these circumstances we think another jury should be permitted to pass upon the question of appellant's guilt. It may be that upon another trial of this cause the state can produce other evidence to connect appellant with the crime charged or to corroborate the testimony of the accomplice.
For the reasons stated this case is reversed and remanded for another trial.
Reversed and remanded.
ETHRIDGE, C.J., and JONES, PATTERSON and ROBERTSON, JJ., concur.