ROBERTSON, Presiding Justice,
for the Court:
Ronald Jordan was indicted, tried and convicted in the Circuit Court of Scott *648 County, for burglary of Gibson’s Discount Store in Forest, Mississippi. The sentence was:
“[T]o serve a term of seven years in the Mississippi State Penitentiary, without suspension or parole, he having been sentenced under the habitual offender statute, in such case made and provided.”
Jordan was convicted on the uncorroborated testimony of an alleged accomplice, James Parkman. Parkman was a convicted felon, having served time in the State Penitentiary at Parchman for burglary, auto theft and grand larceny. Jordan also had served time in the Penitentiary for burglary.
Parkman testified that on September 23, 1977, he and Jordan traveled in Jordan’s car from Jackson to Forest in order to get some drugs. He stated that they rode around Forest, trying to find somebody who could get a doctor’s prescription for drugs. Not being able to find anybody, Jordan went to a Dr. L. W. Willey and secured a prescription for Quaalude, a strong tranquilizer. Parkman remained in the car, while Jordan had this prescription filled at Gibson’s Discount Pharmacy. Parkman said that the arrangement was that Jordan would look around and see if there were any burglar alarms or hidden cameras in the pharmacy.
Parkman further testified that they got a motel room; that Jordan left and came back a short time later with a screwdriver and pillowcase which he gave to Parkman; that their agreement was that Parkman would rob the Pharmacy and Jordan would pick him up about two hours later below the railroad tracks.
Parkman said that during the afternoon and evening they remained at the motel room taking Quaalude (7-14’s) and drinking beer. Parkman testified that while Jordan was out he took a shower and went to bed and when Jordan returned he had to wake him [Parkman] to let him back in the motel room.
Parkman, after admitting that he was high on drugs, said that Jordan drove him to Gibson’s, that he, Parkman, climbed to the roof and pried back a section of the tin roof and climbed down into the building. When he reached the main'floor, he was immediately arrested by police.
On the other hand, defendant Jordan testified that he went to the carnival in Forest and in leaving the carnival ran over the curb and knocked a hole in the oil pan of his car. He went to the motel room and it was locked. He finally had to get the motel owner to unlock his motel room. Finding the bottle of Quaalude capsules and the motel key gone, he called his wife to ask if she had seen or heard from Parkman.
He then went to the A & P store and bought six quarts of Quaker State oil, stuffed a rag in the hole in the oil pan, called Hardy McCormick about getting into his shop, then went to David Creel’s home and, not finding him there, was backing out when he was stopped by Officer Noblin.
Forest policeman Clay Noblin testified that, between 10:30 and 11:00 P.M., he received a call about a break-in at the David Creel residence about a block east of Gibson’s Discount Store. Noblin pulled into the Creel driveway just as Jordan pulled out. He stopped Jordan and asked him to come to the police station. Jordan told Noblin that he had a hole in his oil pan, and that he was looking for Creel to do some welding on his car. Noblin said that Jordan put a quart of oil in his car before leaving the Creel residence. Noblin then followed Jordan to the police station. Noblin said that Jordan told him the next day that his motor burned up after he had parked at the police station.
Jordan’s testimony was also corroborated by Hardy McCormick, who owned an automobile repair shop in Forest. McCormick testified that Jordan called him around 9:30 P.M.; he wanted to get into his repair shop to repair an oil pan. McCormick referred him to David Creel, who worked for him.
Ms. Sylvia Gatewood testified that Jordan came to the A & P store late that night and bought six quarts of Quaker State oil.
Ms. Salter, the motel owner, testified that around 10:00 P.M. September 23, 1977, she had to open the motel room for Jordan. *649 Appellant’s wife, Mrs. Elizabeth Jordan, testified that around 10:00 P.M. her husband called her inquiring about Parkman’s whereabouts.
Appellant Jordan readily admitted that he had taken Parkman with him to Forest, that he had gotten a prescription from Dr. L. W. Willey, that he had had it filled at Gibson’s Discount Pharmacy, that he had checked into the motel and had attended the carnival, but he denied having any part in planning or carrying out the burglary.
Although the only testimony connecting Jordan with the burglary was Parkman’s uncorroborated testimony, the jury found Jordan guilty as charged. After the trial was concluded late in the day, the court recessed until the next morning, October 12th, for sentencing.
The next morning Jordan filed a motion for a new trial on newly discovered evidence. At the hearing on the motion, Jordan testified that about 8:00 A.M., October 12th, Parkman called down to him from the cell above, telling him that he had lied but that he had to testify against him because he was going to get 17 years in the penitentiary without probation or parole.
Jerry Lanthrip, who was in the same cell with Jordan, testified that he heard Parkman call down and make that statement. James A. Warnsley testified that he heard Parkman make the statement that Jordan was not with him when he broke in, but that he had to turn state’s evidence because they were going to give him 17 years with no parole, and that if he turned state’s evidence he would get 7 years and “do his time in the county jail.”
Parkman himself testified on the motion for a new trial. When asked the question: “Did you feel compelled to testify against Ronald Jordan because you were afraid you would receive 17 years?”, he answered: “Yes, sir, I done that so I wouldn’t get 17 years.”
On cross-examination, Parkman further testified:
“Q. . . . When did you change your story, Mr. Parkman, about taking the rap yourself and implicating someone else?
A. When someone told me I was getting 17 years.
Q. And that influenced your testimony, influenced your story at that time?
A. Yes, sir, it did.
Q. You decided at that time to implicate Ronald Jordan in this, is that correct?
A. Yes, sir.
Q. Prior to that time you had no intentions of implicating Ronald Jordan, is that correct?
A. Right.
Q. Because you had told them you were the only one involved in that crime, is that correct?
A. Yes, sir.”
Richard J. Spears was in the cell with Parkman. He testified:
“A. ... I know I heard him say if he didn’t testify, that they were going to give him 17 years with no parole.
Q. And who did he say that to?
A. To Ronald.

Q. Did Parkman ever discuss with you this thing about if he didn’t testify, he would get 17 years with no parole?
A. Yes.
Q. He discussed that with you?
A. He did.
Q. Did he discuss it with anyone else?
A. All of us there.
Q. And did he say that was the reason he testified, that he was afraid he would get 17 years if he did not?
A. Right.
Q. And as a result of his testimony, he got seven years, is that correct?
A. Yes.”
The trial court should have granted a new trial on this newly discovered evidence.
In Cole v. State, 217 Miss. 779, 65 So.2d 262 (1953), we said:
“This Court has adopted a rule that a defendant can be convicted on the uncorroborated testimony of an accomplice, but *650 it has carefully restricted the scope of that doctrine by holding that such uncorroborated testimony should be viewed with great caution and suspicion, and that it must be reasonable and not improbable or self-contradictory, or substantially impeached.” 217 Miss. at 785, 65 So.2d at 264. (Emphasis added).
In considering the uncorroborated testimony of Parkman, the jury was entitled to have all of this newly discovered evidence before it. It probably would have influenced the jury in the weight they gave to the uncorroborated testimony of Parkman.
Another assignment of error was that:
The Trial Court erred in pronouncing sentence upon the Appellant under the Habitual Criminal Act, when Appellant was not indicted under said Act.
In Bell v. State, 355 So.2d 1106 (Miss.1978), this Court quoted with approval from Lay v. State, 310 So.2d 908 (Miss.1975):
“Under our practice, if enhanced punishment is sought, the indictment or affidavit must include both the principal charge and a charge of previous convictions and both charges proved before punishment may be enhanced.” 355 So.2d at 1108.
The judgment of the trial court is reversed and this cause remanded for a new trial.
REVERSED AND REMANDED.
PATTERSON, C. J., SMITH, P. J., and SUGG, WALKER, BROOM, COFER and BOWLING, JJ., concur.
LEE, J., took no part.