# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2004-KA-00730-SCT

*WARREN JEROME DILWORTH*

**v.**

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 02/27/2004 |
| TRIAL JUDGE: | HON. KOSTA N. VLAHOS |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | PHILLIP W. BROADHEAD |
| | ARTHUR D. CARLISLE |
| | AUSTIN R. NIMOCKS |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: W. GLENN WATTS |
| DISTRICT ATTORNEY: | CONO CARANNA |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 06/16/2005 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE WALLER, P.J., DICKINSON AND RANDOLPH, JJ.**

**WALLER, PRESIDING JUSTICE, FOR THE COURT:**

¶1.    A Harrison County Circuit Court jury convicted Warren Jerome Dilworth of the murder of William Dennis Watford. Warren Dilworth was sentenced to life in prison. He now appeals the conviction and sentence, which we affirm.

## FACTS

¶2.    William Dennis Watford came home around 5:30 a.m. on the morning of May 2, 2002. He asked his live-in girlfriend of eleven years, Gina Bosford, for $50 so he could retrieve his bicycle, his primary mode of transportation. Bosford felt frustrated and refused to give him

the money, believing his request was a sure sign Watford had experienced a relapse into drug use after successfully completing rehabilitation and staying clean for about two years. Watford then left their home.

¶3.     Frank Owens testified that on the morning of May 2, he was sitting outside the five-room apartment building where he lived (which he and others described as a crack house). Watford walked up and asked if he could buy $50-worth of crack cocaine. Warren Dilworth's father and Owens' neighbor, Terry Dilworth, then came to the door and asked Owens to come inside, because Warren Dilworth wanted to see him. Warren Dilworth gave Owens $50-worth of cocaine, and Owens took it out to Watford.[1] Owens said when he took the cocaine outside, Watford asked if he could see it, and then grabbed it and ran away without paying.

¶4.     Owens went inside and told Warren Dilworth that Watford had taken the drugs, to which Warren Dilworth responded, "I'm going to whip that mother f***er's ass." Warren Dilworth and Owens then left in a Ford Taurus with Warren Dilworth in the driver's seat. The two men drove into a parking lot where the Vietnamese Catholic Church was under construction and saw Watford scaling a fence. According to Owens, Warren Dilworth drove up, stopped the car, pulled an automatic pistol out from under the passenger's seat, and shot Watford while he was climbing down the other side of the fence.[2]

---

[1]Owens testified he was motivated to transfer the crack cocaine because he was addicted to crack cocaine, and making the transfer would insure he would later receive a free sample of it from Warren Dilworth.

[2]Denise Dilworth, the appellant's sister, picked up Warren Dilworth on the morning of the murder. She said the loaded gun which was used to kill Watford belonged to her, and Warren Dilworth knew she had it that morning because she had moved it from underneath the driver's seat to underneath the passenger's seat while he was in the car.

2

¶5.     Keith David Roy, a carpenter working on the construction of the Vietnamese Catholic Church, gave testimony which was different from Owens' testimony with respect to one major detail.  He said he saw a white male jump over the fence, a car speed into the parking lot, and an arm extend from the passenger's side window at the same moment he heard the gunshot.  He did not see a gun in the hand which extended from the window, but he was absolutely positive an arm did not extend from the driver's side.  When the car backed out of the parking lot, he saw two men in the car and identified Warren Dilworth as the driver.

¶6.     After being shot, Watford tried to continue his flight, but stumbled a few more steps, finally collapsing in the grass behind the house.  Soon afterward, Watford died as a result of major internal bleeding from the bullet which entered his left shoulder and ripped through the blood vessels in his trachea, windpipe, and esophagus, causing his stomach and lungs to fill with blood.

¶7.     Nineteen-year-old Mandy Wallis was at the apartment that morning, along with about ten other people.  She testified that after Warren Dilworth returned from attempting to retrieve the contraband, he reported he had gotten neither the crack nor his money, but had "shot the mother f***er."  Wallis says he then took the gun out of his back pocket and handed it to his father, Terry Dilworth, at his father's request.  She testified Terry Dilworth then smelled the gun and said, "You sure did."  However, Denise Dilworth, the appellant's sister, testified Warren Dilworth never said anything about shooting anyone, but simply kept repeating he thought someone was dead.  She said she never saw him with a gun.

¶8.     After parting ways with Warren Dilworth, Owens went to several casinos, spent the night on a bench in front of one of the casinos, and was found by police the next day while

3

playing nickel slots. The officer who detained him testified Owens immediately told the officers he was glad to see them, because he had something he wanted to get off his chest. After being detained by police for questioning, Owens implicated Warren Dilworth in the murder. Police arrested Warren Dilworth the next day when he turned himself in at the Biloxi Police Department.

## ANALYSIS

¶9. Warren Dilworth raises two issues for appeal: (1) Whether the trial court erred in granting a confusing accessory-before-the-fact instruction; and (2) Whether the verdict was against the sufficiency and weight of the evidence.

### A. Instruction S-3

¶10. Warren Dilworth argues that in granting Instruction S-3, the trial court allowed an instruction which misled the jury to believe it could make a finding of guilt as an accessory before the fact on lesser proof than required by our precedent. When determining whether the trial court erred in granting or refusing various instructions, we consider as a whole all the instructions given. *Simmons v. State*, 805 So. 2d 452, 475-76 (Miss. 2001). All instructions must be supported by the evidence in the record. *Brazile v. State*, 514 So. 2d 325, 326 (Miss. 1987).

¶11. Instruction S-3 stated:

> The [c]ourt instructs the jury that one who wilfully, unlawfully, and feloniously aids, abets, assists, or otherwise encourages the commission of a crime is just as guilty under the law as if he had committed the whole crime with his hand.

¶12. Jury Instruction S-3 gave the jury the option of convicting Warren Dilworth on the alternative theory that he aided and abetted Owens in the murder of Watford. Warren

4

Dilworth's argument that the instruction relieved the State of its burden of proof regarding conviction as an accessory-before-the-fact is inherently flawed by the fact that S-3 was not an accessory-before-the-fact instruction. Aiding and abetting and acting as an accessory-before-the-fact are two wholly distinct crimes. As we noted in *Hooker v. State*, 716 So. 2d 1104, 1110 (Miss. 1998), the "primary difference is that if a person is actually or constructively present at the offense, due to his participation, he is an aider and abettor; if not present, he is an accessory-before-the-fact."

¶13. It is uncontested that Warren Dilworth was present and willingly participated in the commission of the murder. Therefore, the pertinent question is whether S-3 accurately instructed the jury as to the crime of aiding and abetting. In *Swinford v. State*, 653 So. 2d 912, 915 (Miss. 1995), we held "[a]ny person who is present at the commission of a criminal offense and aids, counsels, or encourages another in the commission of that offense is an 'aider and abettor' and is equally guilty with the principal offender." (alterations omitted). The language of Instruction S-3 precisely reiterates Mississippi law as articulated in *Swinford*.

¶14. Warren Dilworth attempts to draw a comparison between Instruction S-3 and the erroneous instruction given in *Berry v. State*, 728 So. 2d 568, 570 (Miss. 1999). In that case, the trial court gave an instruction which stated the defendant could be convicted as an aider and abettor to the crime if the jury found she did "any act *which is an element of the crime*[.]" (emphasis added). The instructions given in this case are not analogous to those of *Berry*, but instead are substantively identical to the aiding and abetting instructions which we approved in

*Simmons v. State*, 805 So. 2d at 475.[3]  We hold, as we held in *Simmons*, that Instruction S-3 is distinguishable from that in *Berry*, since S-3 "simply does not contain the operative language that could be construed as reading that a defendant found guilty of aiding and abetting with respect to one element of the crime is guilty as a principal." *Id.*

¶15.     Instruction S-3 follows the language of our holding in *Swinford* and is substantively identical to the language of the instruction of which we approved in *Simmons*; therefore, we find this argument to be without merit.

### B. Sufficiency and Weight of the Evidence

¶16.     Warren Dilworth combines his arguments regarding the sufficiency of the evidence and the weight of the evidence.  However, because the two concepts are quite different, we address them separately.[4]

---

[3]The instruction in *Simmons* read as follows: "The [c]ourt instructs the jury that one who willfully, unlawfully, and feloniously aids, abets, assists, or otherwise encourages the commission of a crime is just as guilty under the law as if he or she had committed the whole crime with his or her hand."  805 So. 2d at 475.

[4]In the past, our jurisprudence was the source of the confusion surrounding the standards of review for sufficiency and weight of the evidence.  However, in *Bush v. State*, 895 So. 2d 836, 844 n.3 (Miss. 2005), we retreated from our reasoning in a number of cases to the degree which they erroneously overlapped the standards.  *See White v. State*, 732 So. 2d 961, 965-66 (Miss. 1999)(commingling distinctions between standards for weight and sufficiency of evidence); *Turner v. State*, 726 So. 2d 117, 124-25 (Miss. 1998) (misstating requirements of standard of review for weight of evidence challenge); *Thornhill v. State*, 561 So. 2d 1025, 1030 (Miss. 1989) (stating that in reviewing challenge to weight of evidence "court must accept as true the evidence which supports the verdict"); *Wetz v. State*, 503 So. 2d 803, 812 (Miss. 1987) (misstating requirements of standard of review for weight of evidence challenge); *Watts v. State*, 818 So. 2d 1207, 1213 (Miss. Ct. App. 2002) (citing *White*); *see also Kingston v. State*, 846 So. 2d 1023, 1026 (Miss. 2003) ("In determining whether a jury verdict is against the overwhelming weight of the evidence, this Court must accept as true the evidence which supports the verdict[.]") (quoting *Dudley v. State*, 719 So. 2d 180, 182 (Miss. 1998)); *Hubbard v. State*, 819 So. 2d 1192, 1196 (Miss. 2001); *Schuck v. State,* 865 So. 2d

*1. Sufficiency of the Evidence*

¶17.	The standard of review for a post-trial motion is abuse of discretion. ***Howell v. State***, 860 So. 2d 704, 764 (Miss. 2003). In the recent case of ***Bush v. State***, 895 So. 2d 836, 843 (Miss. 2005), we discussed the standard which applies in a challenge to a verdict based on the sufficiency of the evidence:

> In ***Carr v. State***, 208 So. 2d 886, 889 (Miss. 1968), we stated that in considering whether the evidence is sufficient to sustain a conviction in the face of a motion for directed verdict or for judgment notwithstanding the verdict, the critical inquiry is whether the evidence shows 'beyond a reasonable doubt that accused committed the act charged, and that he did so under such circumstances that every element of the offense existed; and where the evidence fails to meet this test it is insufficient to support a conviction.' However, this inquiry does not require a court to
>> 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.' Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.
>
> ***Jackson v. Virginia***, 443 U.S. 307, 315, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (citations omitted) (emphasis in original). Should the facts and inferences

---

1111, 1123 (Miss. 2003); ***Todd v. State***, 806 So. 2d 1086, 1090 (Miss. 2001); ***Taylor v. State***, 795 So. 2d 512, 515-16 (Miss. 2001); ***Banks v. State***, 782 So. 2d 1237, 1243 (Miss. 2001); ***Crawford v. State***, 754 So. 2d 1211, 1222 (Miss. 2000)); ***Walker v. State***, 740 So. 2d 873, 888-89 (Miss. 1999); ***Carter v. State***, 743 So. 2d 985, 989 (Miss. 1999); ***Bailey v. State***, 729 So. 2d 1255, 1265 (Miss. 1999); ***Collier v. State***, 711 So. 2d 458, 461 (Miss. 1998); ***Pleasant v. State***, 701 So. 2d 799, 802 (Miss. 1997); ***Coleman v. State***, 697 So. 2d 777, 788 (Miss. 1997); ***Herring v. State***, 691 So. 2d 948, 957 (Miss. 1997); ***Ellis v. State***, 667 So. 2d 599, 612 (Miss. 1995); ***Robinson v. State***, 662 So. 2d 1100, 1105 (Miss. 1995); ***Holmes v. State***, 660 So. 2d 1225, 1227 (Miss. 1995); ***Murrell v. State***, 655 So. 2d 881, 883 (Miss. 1995); ***Johnson v. State***, 642 So. 2d 924, 928 (Miss. 1994); ***Nicolaou v. State***, 612 So. 2d 1080, 1082 (Miss. 1992); ***Parker v. State***, 606 So. 2d 1132, 1140 (Miss. 1992); ***Van Buren v. State***, 498 So. 2d 1224, 1228-29 (Miss. 1986); ***Carroll v. State***, 396 So. 2d 1033, 1035 (Miss. 1981); *but see* ***Edwards v. State***, 736 So. 2d 475, 484-85 (Miss. Ct. App. 1999) (accurately explaining the distinction between the standards of sufficiency and weight of the evidence).

considered in a challenge to the sufficiency of the evidence 'point in favor of the defendant on any element of the offense with sufficient force that reasonable men could not have found beyond a reasonable doubt that the defendant was guilty,' the proper remedy is for the appellate court to reverse and render[, i.e. reverse and discharge]. *Edwards v. State*, 469 So. 2d 68, 70 (Miss. 1985) (citing *May v. State*, 460 So. 2d 778, 781 (Miss. 1984); *see also Dycus v. State*, 875 So. 2d 140, 164 (Miss. 2004). However, if a review of the evidence reveals that it is of such quality and weight that, 'having in mind the beyond a reasonable doubt burden of proof standard, reasonable fair-minded men in the exercise of impartial judgment might reach different conclusions on every element of the offense,' the evidence will be deemed to have been sufficient.

¶18.    In order to convict Warren Dilworth of the murder of Dennis Watford, the State was required to prove beyond a reasonable doubt that Warren Dilworth: (1) killed Dennis Watford; (2) without authority of law; and (3) with deliberate design to effect his death. Miss. Code Ann. § 97-3-19 (1)(a) (Rev. 2002). In the alternative, the State was required to prove beyond a reasonable doubt that: (1) Warren Dilworth was present at the commission of Watford's murder; and (2) aided, counseled, or encouraged Frank Owens in (a) killing Dennis Watford; (b) without authority of law; and (c) with deliberate design to effect his death. *See* Miss. Code Ann. § 97-3-19 (1)(a) (Rev. 2002); *Swinford*, 653 So. 2d at 915.

¶19.    Owens testified Warren Dilworth joined him in attempting to retrieve the crack cocaine from Watford and purposed to do violence to him when he found him. He also testified Warren Dilworth drove the car to the Vietnamese Catholic Church parking lot, pulled a gun out from under the passenger's seat, and shot Watford as he was fleeing. Viewing the evidence in the light most favorable to the State, this testimony alone provided sufficient evidence with which a rational person could have found the State proved Warren Dilworth committed all of the elements of murder. This argument is without merit.

8

*2. Weight of the Evidence*

¶20.　"A motion for new trial challenges the weight of the evidence. A reversal is warranted only if the lower court abused its discretion in denying a motion for new trial." ***Howell***, 860 So. 2d at 764 (citing ***Edwards v. State***, 800 So. 2d 454, 464 (Miss. 2001); ***Sheffield v. State***, 749 So. 2d 123, 127 (Miss. 1999)). "A greater quantum of evidence favoring the [S]tate is necessary for the [S]tate to withstand a motion for a new trial, as distinguished from a motion for J.N.O.V." ***Pharr v. State***, 465 So. 2d 294, 302 (Miss. 1984).

¶21.　Only in "exceptional cases in which the evidence preponderates heavily against the verdict" should the trial court invade the province of the jury and grant a new trial. ***Amiker v. Drugs For Less, Inc.***, 796 So. 2d 942, 947 (Miss. 2000). The verdict must be "so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." ***Bush***, 895 So. 2d at 844.

> However, the evidence should be weighed in the light most favorable to the verdict. A reversal on the grounds that the verdict was against the overwhelming weight of the evidence, unlike a reversal based on insufficient evidence, does not mean that acquittal was the only proper verdict. Rather, as the 'thirteenth juror,' the court simply disagrees with the jury's resolution of the conflicting testimony. This difference of opinion does not signify acquittal any more than a disagreement among the jurors themselves. Instead, the proper remedy is to grant a new trial.

***Id***. (footnotes & citations omitted); *cf*. ***Thomas v. State***, 129 Miss. 332, 92 So. 225, 226 (1922) (holding that although the circumstances warranting disturbance of the jury's verdict are "exceedingly rare," such situations arise "where, from the whole circumstances, the testimony is contradictory and unreasonable, and so highly improbable that the truth of it becomes so extremely doubtful that it is repulsive to the reasoning of the ordinary mind.")).

9

¶22. Though the standard of review in such cases is high, "[t]his Court has not hesitated to invoke its authority to order a new trial and allow a second jury to pass on the evidence where it considers the first jury's determination of guilt to be based on extremely weak or tenuous evidence[,] even where that evidence is sufficient to withstand a motion for a directed verdict." *Lambert v. State*, 462 So. 2d 308, 322 (Miss. 1984) (Lee, J., dissenting) (citing *Shore v. State*, 287 So. 2d 766 (Miss. 1974); *Feranda v. State*, 267 So. 2d 305 (Miss. 1972); *Barnes v. State*, 249 So. 2d 383 (Miss. 1971); *Cook v. State*, 248 So. 2d 434 (Miss. 1971); *Peterson v. State*, 242 So. 2d 420 (Miss. 1970); *Hux v. State*, 234 So. 2d 50 (Miss. 1970); *Quarles v. State*, 199 So. 2d 58 (Miss. 1967); *Yelverton v. State*, 191 So. 2d 393 (Miss. 1966); *Mister v. State*, 190 So. 2d 869 (Miss. 1966); *Cole v. State*, 217 Miss. 779, 65 So. 2d 262 (1953); *Dickerson v. State*, 54 So. 2d 925 (Miss. 1951); *Jefferson v. State*, 52 So. 2d 925 (Miss. 1951); *Conway v. State*, 177 Miss. 461, 171 So. 16 (1936)); *see also Hutchins v. State*, 220 So. 2d 276 (Miss. 1969); *Brown v. State*, 219 Miss. 748, 70 So. 2d 23 (1954); *Williams v. State*, 220 Miss. 800, 72 So. 2d 147 (1954); *Martin v. State*, 197 Miss. 96, 19 So. 2d 488 (1944); *Jolly v. State*, 174 So. 244 (Miss. 1937); *Holifield v. State*, 132 Miss. 446, 96 So. 306 (1923); *Bolden v. State*, 98 Miss. 723, 54 So. 241 (1910).

¶23. Though in the past we have overturned verdicts which were based on evidence so "extremely doubtful that it [was] repulsive to the reasoning of the ordinary mind," *Thomas*, 92 So. at 226, this is certainly not one of that quality. We acknowledge there is conflicting testimony as to whether Warren Dilworth or Frank Owens fired the gun at Watford. However, that is of no effect since there was more than enough undisputed evidence Warren Dilworth

10

aided and abetted in the commission of Watford's murder, making him as guilty as the principal. Witnesses for the State and defense testified that Warren Dilworth drove the car which was used in the murder and was therefore present during the commission of the crime. And even if he was not the one who pulled the trigger of the gun, he deliberately chased Watford in the car and parked it close enough for Owens to fire the pistol at Watford and end his life. This argument is without merit.

## CONCLUSION

¶24. After a thorough review of the record in this case, we find the trial court did not err in granting Instruction S-3, there was sufficient evidence with which to convict Warren Dilworth, and the verdict was not against the overwhelming weight of the evidence. Therefore, we affirm the trial court's judgment.

¶25. **CONVICTION OF MURDER AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED.**

**SMITH, C.J., EASLEY, CARLSON, GRAVES, DICKINSON AND RANDOLPH, JJ., CONCUR. COBB, P.J., CONCURS IN RESULT ONLY. DIAZ, J., NOT PARTICIPATING.**