924 So.2d 562 (2005)
Michael DURDIN a/k/a Michael Lloyd Durdin a/k/a Mike L. Durdin, Appellant
v.
STATE of Mississippi, Appellee.
No. 2004-KA-00735-COA.
Court of Appeals of Mississippi.
November 22, 2005.
Rehearing Denied March 21, 2006.
*563 Stephen P. Livingston, New Albany, attorney for appellant.
Office of Attorney General by W. Daniel Hinchcliff, attorney for appellee.
EN BANC.
IRVING, J., for the Court.
¶ 1. Michael Durdin was convicted of sexual battery by a Union County jury. Feeling aggrieved, he challenges his conviction on the grounds that (1) the evidence produced below was insufficient to support his conviction and (2) several of his jury instructions were erroneously denied by the court below.
¶ 2. Finding no error, we affirm.

FACTS
¶ 3. In September 2001, B.G.[1] spoke to a teacher at her school concerning an incident that had happened to her friend, K.D. According to B.G., she had spent the night at K.D.'s house in April when she witnessed K.D. and Durdin engage in a sexual act. At the time, Durdin was thirty years old. At trial, the testimony of B.G. and K.D. regarding what happened that night was virtually the same. According to the girls, K.D.'s family had gone to the store, leaving K.D. and B.G. alone with Durdin, K.D.'s mother's live-in boyfriend. At that time, Durdin began playing a pornographic video and asked K.D. to give him a "blow-job." Then eleven-year-old K.D. proceeded to perform oral sex on Durdin while B.G. watched. The oral sex stopped when K.D.'s mother and siblings returned home from the store.
¶ 4. The testimony of K.D. and B.G. regarding what happened after the assault is not entirely in agreement. According to K.D., the two girls continued to be friends and socialized at school. B.G. testified that she thought K.D. was mad at her and did not speak to her again after the incident in question.
¶ 5. B.G. told no one about the assault until the next school year when a friend convinced her to take the information to a teacher. At that time, the Mississippi Department of Human Services (DHS) was brought in to investigate the allegations. K.D. admitted to DHS that she had performed oral sex on Durdin. K.D. later recanted that admission; during direct examination at trial, she said she recanted because her mother had told her that if she did not do so, her baby brother would grow up without a father.
¶ 6. At trial, Durdin's attorney pressed both K.D. and B.G. with questions about whether they had fabricated their story together. Both denied having discussed the incident with each other. K.D. admitted during cross-examination that she hated Durdin and would do anything to have him move out of the house.[2] During its *564 case-in-chief, the State called only three witnesses: K.D., B.G., and the investigating police officer. During the defense case-in-chief, only one witness, D.H., K.D.'s great aunt, was called. D.H. testified that K.D. had called to tell D.H. that K.D. had not been molested by Durdin, and that K.D. was now afraid to tell the truth. Despite D.H.'s testimony, the jury returned a guilty verdict.

ANALYSIS AND DISCUSSION OF THE ISSUES

(1) Sufficiency of the Evidence
¶ 7. Durdin first asks us to reverse his conviction for insufficiency of the evidence. When this Court reviews appeals based on insufficiency of evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Bush v. State, 895 So.2d 836, 843(¶ 16) (Miss.2005) (quoting Jackson v. Virginia, 443 U.S. 307, 318, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)).
¶ 8. Durdin's basic contention is that the State's case consisted almost entirely of the testimony of two young girls whose stories were sometimes contradictory. Durdin also argues that K.D.'s testimony was impeached by the testimony of D.H., who testified that K.D. had told her that she lied about what had happened. Durdin points out that neither K.D. nor B.G.'s testimony was corroborated by evidence other than the statement of the other girl.
¶ 9. Durdin argues that the testimony of both K.D. and B.G. should have been treated with caution and suspicion under the ruling of Black v. State, which held: "the uncorroborated testimony of an accomplice will support a guilty verdict, but the rule requires that such uncorroborated testimony should be viewed with great caution and suspicion, and that it must be reasonable and not improbable or self-contradictory, or substantially impeached." Black v. State, 336 So.2d 1302, 1303 (Miss. 1976) (citing Hutchins v. State, 220 So.2d 276 (Miss.1969); Cole v. State, 217 Miss. 779, 65 So.2d 262 (1953)). However, Black is not applicable to this case for the simple reason that K.D. and B.G. were not accomplices: K.D. was the victim in this case, not the perpetrator. In order to reverse Durdin's conviction, this Court would have to extend the reasoning of Black to support the notion that the uncorroborated testimony of a victim and witness should be viewed with the same suspicion as that of accomplices. We decline to do so.
¶ 10. Durdin cites several more cases as support for this argument, claiming: "[t]his Honorable Court has held on numerous occasions that if the testimony is unreasonable, that if it is contradictory, and if it is impeached, then the case should be reversed." The first case Durdin cites, Clemons v. State, 535 So.2d 1354 (Miss. 1988), provides no relief to Durdin.[3] The court in Clemons stated: "[t]he testimony of a co-indictee or a co-conspirator, if not improbable, or materially self-contradictory, or thoroughly impeached, is sufficient to sustain a conviction." Clemons, 535 So.2d at 1358. This is merely a restatement of the holding of Black and provides no relief to Durdin for the same reason. The next case cited by Durdin reversed a conviction because the testimony of the defendant's accomplice was insufficient to *565 sustain the conviction. Flanagan v. State, 605 So.2d 753, 758 (Miss.1992). This case, like Black and Clemons, supplies no relief to Durdin because K.D. and B.G. were not accomplices.
¶ 11. Particularly on point is a recent Mississippi Supreme Court case correcting a defendant who appealed his sentence on the basis of Flanagan:
Payton [the appellant/defendant] argues that Freeman's [a witness] testimony required corroboration. Apparently, Payton confuses the corroboration required for questionable co-conspirator testimony with that of a disinterested witness. The only requirements for the admissibility of a disinterested witness' testimony is that the witness be competent and speak from personal knowledge, and that the testimony be relevant.
Payton v. State, 897 So.2d 921, 938(¶ 47) (Miss.2003). The reasoning of Payton is directly applicable to the case at bar. K.D. was a complaining victim. B.G. was a disinterested witness whose testimony did not require corroboration as might an accomplice's testimony. Durdin's arguments to the contrary are without merit.
¶ 12. Durdin also argues[4] that K.D.'s testimony was impeached by the testimony of D.H., but the decision of the jury convicting him of sexual battery indicates otherwise. Determining the credibility of a witness is the role of the jury: "[we] consistently hold that decisions as to the weight and credibility of a witness's statement are the proper province of the jury...." Doe v. Stegall, 757 So.2d 201, 205(¶ 12) (Miss.2000). The jury in the present case was not required to believe the testimony of D.H. instead of K.D's. The verdict of the jury indicates that, in fact, it found K.D. to be more credible than D.H. We will not disturb the decision of the jury to find that K.D.'s testimony was impeached when the jury clearly believed that it was not.
¶ 13. The evidence presented by the State during Durdin's trial was more than sufficient for a reasonable jury to find that Durdin committed the crime of sexual battery. The State produced not only a complaining victim, but also an eyewitness to the crime. Both girls testified that Durdin played a pornographic video and that K.D. subsequently performed oral sex on Durdin. Although the testimony of K.D.'s great aunt contradicted K.D.'s testimony, it was up to the jury to assess the credibility of these two witnesses, and apparently, the jury accepted K.D.'s testimony over the great aunt's. There was no reason for the jury to have viewed the testimony of K.D. and B.G. with special scrutiny under the reasoning of cases like Black. The evidence presented was sufficient to support a conviction; Durdin's first point of error is therefore rejected.

(2) Jury instruction errors
¶ 14. In his second, third, and fourth assignments of error, Durdin appeals his sentence on the grounds that several of his proposed jury instructions were improperly denied. When reviewing the grant or denial of a jury instruction, "[t]he standard of review employed by this Court ... is that of viewing the instructions as a whole." Adams v. State, 772 So.2d 1010, 1015-16(¶ 20) (Miss.2000) (citing Humphrey v. State, 759 So.2d 368, 380(¶ 33) (Miss.2000)). Defendants do not *566 have an absolute right to have their jury instructions granted: "[a] defendant is entitled to have jury instructions given which present his theory of the case, however, this entitlement is limited in that the court may refuse an instruction which incorrectly states the law, is covered fairly elsewhere in the instructions, or is without foundation in the evidence." Humphrey v. State, 759 So.2d 368, 380(¶ 33) (Miss.2000) (quoting Heidel v. State, 587 So.2d 835, 842 (Miss.1991)). Therefore, Durdin's proposed instructions were properly denied if they were incorrect, repetitive, or without foundation from the evidence presented. With that standard in mind, we examine Durdin's specific complaints.
¶ 15. In his second point of error, Durdin complained of the denial of proposed instructions D-1, D-3, D-5, D-6, D-7, and D-9, all of which had to do with reasonable doubt. The record reveals no explanation for the rejection of D-6; all the other instructions were denied because they were already included in the court's instructions.
¶ 16. In order to present an accurate view of the instructions, the denied instructions are presented in full here.
D-1: The Court instructs the jury that the law presumes every person charged with the commission of a crime to be innocent. This presumption places upon the State the burden of proving the Defendant guilty of every material element of the crime with which he is charged. Before you can return a verdict of guilty, the State must prove to your satisfaction beyond a reasonable doubt that the Defendant is guilty. The presumption of innocence attends the Defendant throughout the trial and prevails at its close unless overcome by evidence with [sic] satisfies the jury of the Defendant's guilt beyond a reasonable doubt. The Defendant is not required to prove his innocence.
D-3: The Court instructs the jury that at the outset of a trial the Accused is presumed to be wholly innocent of the while [sic] crime charged. He is not required to prove himself innocent or put any evidence in at all upon the subject. In considering testimony in the case, you must look at the testimony and view it in the light of that presumption which the law clothes the Accused with, that he is wholly innocent, and it is the presumption that abides with him throughout the trial of the case until the evidence convinces you to the contrary beyond all reasonable doubt of his guilt.
D-5: The Court instructs the jury that it is the burden of the State of Mississippi to prove each and every element of the crime of which the accused is charged beyond a reasonable doubt, and if the State fails to do so, even though you may believe that Michael Lloyd Durdin is guilty of misconduct other than the crime with which he is charged, it is your sworn duty to find Michael Lloyd Durdin "NOT GUILTY".
D-6: The Court instructs the jury that you are to find the Defendant, Michael Lloyd Durdin, "Not Guilty".
D-7: The Court instructs the jury that if you find that the prosecution has failed to prove beyond a reasonable doubt any one or more of the elements of the crime charged, you must find the Defendant, Michael Lloyd Durdin, "Not Guilty".
D-9: The Court instructs the jury that you are bound, in deliberating upon this case, to give the Defendant the benefit of any reasonable doubt of the Defendant's guilt that arises out of the evidence or want of evidence in his case. There is always a reasonable doubt of the Defendant's guilt when the evidence *567 simply makes it probable that the Defendant is guilty. Mere probability of guilt will never warrant you to convict the Defendant. It is only when on the whole evidence you are able to say on you [sic] oaths, beyond a reasonable doubt, that the Defendant is guilty, that the law will permit you to find him guilty. You might be able to say that you believe him to be guilty, and yet, if you are not able to say on your oaths, beyond a reasonable doubt, that he is guilty, it is your sworn duty to find the Defendant "not guilty".
¶ 17. All the instructions above concerned either the presumption of innocence or reasonable doubt, with the exception of D-6, which was a peremptory instruction. Since the State provided adequate evidence to support a conviction at the close of its case-in-chief, the court below was correct in denying a peremptory instruction to the defendant. Court Instruction No. 2 instructed the jury regarding all the necessary aspects of reasonable doubt: "The burden of proving the Defendant guilty of every material element of the crime with which he is charged is upon the State of Mississippi. Before you can return a verdict of guilty, the State of Mississippi must prove beyond a reasonable doubt that the Defendant is guilty." Court Instruction No. 3 adequately instructed the jury regarding the presumption of innocence:
The law presumes every person charged with the commission of a crime to be innocent. This presumption places upon the State of Mississippi the burden of proving the Defendant guilty beyond a reasonable doubt. The presumption of innocence attends the Defendant throughout the trial and prevails at its close unless overcome by evidence which satisfies the jury of his guilt beyond a reasonable doubt. The Defendant is not required to prove his innocence.
These two instructions sufficiently addressed reasonable doubt and the presumption of innocence, thereby making Durdin's proposed instructions repetitive and unnecessary. After reading all the proposed and granted instructions, we find that Durdin's proposed instructions were properly denied by the court below. Durdin's second point of error is without merit.
¶ 18. In his third point of error, Durdin maintains that the court below erred when it denied his proposed instruction D-13, which reads:
The Court instructs the jury that the verdict of the jury must represent the considered judgment of each juror. In order to return a verdict, it will be necessary that each juror agree. In other words, all twelve jurors must agree before returning a verdict in this case. It is your sworn duty as jurors to consult with one another and to deliberate in view of reaching an agreement, if you can do so without violence to your individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. In the Course [sic] of your deliberations, do not hesitate to re-examine your own views and change your opinion, if convicted [sic] it is erroneous, but do not surrender your honest convictions as to the weight or effect of evidence solely because of the opinion of your fellow jurors or for the mere purpose of repetitive a verdict.
If there is any juror who is not convinced beyond a reasonable doubt of the Defendant's guilt, it is his or her duty to vote "NOT GUILTY", even though it may cause a mistrial of this case.
*568 However, this proposed instruction was adequately covered by Court Instruction No. 4, which reads:
The verdict of the jury must represent the considered judgment of each juror. In order to return a verdict, it will be necessary that each juror agree thereto. In other words, all twelve of you must agree on a verdict in this case. It is your duty as jurors to consult with one another and to deliberate in view of reaching an agreement if you can do so without violence to your individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to re-examine your views and change your opinion, if convinced that your previous opinion was erroneous, but do not surrender your honest convictions as to the weight or effect of the evidence solely because of the opinion of your fellow jurors or for the mere purpose of returning a verdict.
This instruction made Durdin's proposed instruction D-13 superfluous, and the instruction was repetitive of instructions already granted. Therefore, no error was committed by the court below in denying the proposed instruction. Durdin's third point of error is denied.
¶ 19. As his last point of error, Durdin argues that it was error for the court below to deny his proposed instruction D-12, which reads:
The Defendant is under no duty to present evidence or testify. If he does not present evidence, or does not become a witness on his own behalf, no adverse or harmful inference may be drawn against him whatsoever.
There are many reasons why a person may not present evidence which have nothing to do with guilt or innocence. He may not be well educated [sic]. He may not be articulate. Public attention may make him nervous and too ill at ease to gather his thoughts, or speak well. A person may not testify for the simple reason that it is his or her legitimate and respected constitutional right not to testify.
Despite the number and variety of reasons why a person might not testify or present evidence, you are not to speculate concerning the reasons in this case. Nor are you to draw any inference whatsoever, beneficial or detrimental, and it shall not have any bearing on your consideration of the evidence or issues in this case.
The court below denied this instruction because it objected to the last two paragraphs of the proposed instruction (explaining possible reasons why a defendant might not testify). Durdin was given the opportunity to remove the offending paragraphs and resubmit the instruction without them; he did so, and the revised instruction, D-12A, was granted. The revised instruction reads: "The Defendant is under no duty to present evidence or testify. If he does not present evidence, or does not become a witness on his own behalf, no adverse or harmful inference may be drawn against him whatsoever." This revised instruction adequately instructed the jury regarding a defendant's right not to take the stand. Since an instruction concerning Durdin's right not to testify was given, we find no error. Durdin's fourth and final point of error is therefore rejected.
¶ 20. THE JUDGMENT OF THE CIRCUIT COURT OF UNION COUNTY OF CONVICTION OF SEXUAL BATTERY AND SENTENCE OF THIRTY-FIVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL *569 COSTS OF THIS APPEAL ARE ASSESSED TO UNION COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., BRIDGES, CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR.
NOTES
[1] Initials have been used to protect the identity of the victim in this case.
[2] Although Durdin's attorney told the jury during his closing argument that he had not asked K.D. whether she would lie to get Durdin out of the house (but intimated that she clearly would), K.D. was asked during cross-examination whether she would lie to get rid of Durdin. She stated both then and during re-direct that she would do whatever it took while telling the truth to get Durdin out of the house.
[3] This case has been reversed by the U.S. Supreme Court on other grounds. Clemons v. Mississippi, 494 U.S. 738, 110 S.Ct. 1441, 108 L.Ed.2d 725 (1990).
[4] We believe this is part of Durdin's argument concerning accomplice testimony, but we note that Durdin's appeal brief was poorly written and difficult to understand, so it is not entirely clear to this Court whether these are separate arguments or part of the same argument. In order to err on the side of caution, we briefly address the issue of K.D.'s impeachment here.