MAXWELL, J.,
 

 for the Court.
 

 ¶ 1. A jury in the Circuit Court of Simpson County found Dykes Timber Co., Inc. (Dykes Timber), liable for the wrongful cutting of timber and resulting property damage, and awarded the plaintiff, Sterling Pittman, $3,200. Aggrieved by the amount of the jury’s verdict, Pittman appeals and raises the following assignments of error: (1) the trial court erred in entering judgment on the jury’s verdict; (2) the trial court erred by refusing to allow Pittman to pursue claims for general damages; and (3) the trial court erred by refusing to allow Pittman to call the defendant’s expert witness on cross-examination in his case-in-chief.
 

 ¶ 2. Finding no merit to Pittman’s arguments, we affirm.
 

 FACTUAL AND PROCEDURAL BACKGROUND
 

 ¶ 3. On March 7, 2000, Pittman and Dykes Timber executed a notarized wai'-ranty timber deed. The deed reflected that Pittman agreed to sell Dykes Timber “all merchantable timber” on 1.62 acres of Pittman’s land in Simpson County, Mississippi. According to the deed, Dykes Timber had eighteen months to harvest the trees. The document also reflected that Dykes Timber was provided full rights of ingress and egress, the right to clear areas of land to use as roads, ramps, and loading areas, and the right to clear trees as necessary to harvest the timber. In exchange for the timber, Pittman received $5,000.
 

 ¶ 4. At trial, Pittman maintained that he did not accept the written terms of the timber deed. Rather, he claimed that during negotiations, he and a Dykes Timber employee agreed that the company would harvest only the chip and saw pines on a smaller specified part of the 1.62 acre tract. Pittman also contended that he told a Dykes Timber employee that he wanted to be present at all times during the harvesting. In addition, Pittman testified that although he signed the deed before a notary public, a Dykes Timber employee ran off with the deed before Pittman had the opportunity to read it. Pittman further testified that he has never read the deed and that Dykes Timber refused to give him a copy of it.
 

 
 *925
 
 ¶ 5. During trial, it was established that Dykes Timber began harvesting trees while Pittman was away working offshore. Pittman testified that when he returned home, he became upset because the company had already begun harvesting and had cut down every tree except the chip and saw pines. Dykes Timber employees returned to the property to continue harvesting timber on January 10, 2001, but left after Pittman threatened them and ordered them to immediately vacate his land. Robert Dykes, the president of Dykes Timber, testified that because Pittman ordered the crew to leave his property, Dykes decided not to have the crew return to Pittman’s land, even though Dykes had already paid Pittman $5,000.
 

 ¶ 6. On December 27, 2001, Pittman filed suit against Dykes Timber. He alleged that Dykes Timber cut forty small pine trees, four large pine trees, and around thirty oak trees without his consent. He also alleged that Dykes Timber destroyed a new wooden fence, crushed a sewer line and septic tank, created huge ruts on his property, knocked down a power line which resulted in a ruined freezer of venison, destroyed a redwood henhouse, and bulldozed Pittman’s barbed wire and chick-enwire fences. Pittman sought $300,000 in compensatory and punitive damages for his alleged losses.
 

 ¶ 7. At the conclusion of a one-day trial, the jury returned a verdict in favor of Pittman and assessed damages against Dykes Timber in the amount of $3,200. The trial court entered judgment on April 11, 2008, and neither party filed post-trial motions.
 

 ANALYSIS OF THE ISSUES
 

 ¶ 8. Pittman raises three issues on appeal but failed to include any supporting authority to substantiate his arguments. Though he includes a “Table of Citations” page at the beginning of his brief, it contains no citations to legal authority. The supreme court instructs that it is Pittman’s duty to provide legal authority to support his argument.
 
 See Jones v. Howell,
 
 827 So.2d 691, 702(¶ 40) (Miss.2002) (citations omitted). Arguments without supporting legal authority are considered abandoned, and this Court need not consider them.
 
 Id.
 
 Because Pittman failed to include any legal authority in support of his contentions in his brief, his arguments are all procedurally barred. Notwithstanding the procedural bars, we find Pittman’s claims also fail on the merits for the reasons addressed below.
 

 I. Weight of the Evidence
 

 A. Standard ofRevieiu
 

 ¶ 9. “[I]t is primarily the province of the jury ... to determine the amount of damages to be awarded and the award will normally not be set aside unless so unreasonable in amount as to strike mankind at first blush as being beyond all measure, unreasonable in amount and outrageous.”
 
 Thompson ex rel. Thompson v. Lee County Sch. Dist.,
 
 925 So.2d 57, 72(¶ 23) (Miss.2006) (quoting
 
 Foster v. Noel,
 
 715 So.2d 174, 183(¶ 56) (Miss.1998)).
 

 B. Procedural Bar
 

 ¶ 10. Pittman argues that the amount of damages should have been greater, apparently (although not explicitly) arguing that the verdict is against the overwhelming weight of the evidence. However, the record reveals he failed to move the trial court for a judgment notwithstanding the verdict (JNOV) or for a new trial. It is well established that a litigant may not argue on appeal that the verdict is against the weight or sufficiency of the evidence without first presenting such objection to the trial court. See,
 
 e.g., Holmes v. State,
 
 798 So.2d 533, 537(¶ 16)
 
 *926
 
 (Miss.2001). The purpose of this rule is to ensure that “a trial judge cannot be put in error on a matter which was never presented to him for decision.... [T]he rule applies in both criminal and civil cases.... ”
 
 Cooper v. Lawson,
 
 264 So.2d 890, 891 (Miss.1972) (citation omitted). Therefore, by failing to request a new trial or JNOV, Pittman waived his opportunity to challenge the jury’s determination of damages.
 

 C. Damages
 

 ¶ 11. Although Pittman is barred from challenging the amount of the jury’s award, after reviewing the record, we note that the jury was properly instructed on the various types of damages sought by Pittman. At the conclusion of Dykes Timber’s case, the court held a jury-instruction conference. Though Pittman offered no proposed instructions, the court accepted, without objection from Pittman, several of Dykes Timber’s instructions which outlined Pittman’s burden of proof. The trial court also instructed the jury on the proper calculation of damages in the event that Dykes Timber was found liable.
 

 ¶ 12. Mississippi Code Annotated section 95-5-10 (Supp.2008) provides for statutory damages if trees are cut down, destroyed, or taken without consent of the owner. According to section 95-5-10(1):
 

 If any person shall cut down, deaden, destroy or take away any tree without the consent of the owner of such tree, such person shall pay to the owner of such tree a sum equal to double the fair market value of the tree cut down, deadened, destroyed or taken away, together with the reasonable cost of reforestation, which cost shall not exceed Two Hundred Fifty Dollars ($ 250.00) per acre.... To establish a right of the owner prima facie to recover under the provisions of this subsection, the owner shall only be required to show that such timber belonged to such owner, and that such timber was cut down, deadened, destroyed or taken away by the defendant ... without the consent of such owner.
 

 In order to collect damages, the owner must show: (1) he owned the timber, and (2) the timber was cut down without his consent.
 
 Muirhead v. Vaughn,
 
 878 So.2d 1028, 1032(¶ 12) (Miss.Ct.App.2004).
 

 ¶ 13. The jury was informed of the compensatory and statutory damages available if it determined Pittman proved by a preponderance of the evidence that Dykes Timber had cut down his trees without his consent.
 

 1Í14. Although a will was admitted into evidence which showed that Pittman had inherited the land from his parents, the jury also heard contradictory testimony from his brother, Rockford Pittman. Rockford told the jury that some of the trees cut by Dykes Timber were actually on Rockford’s property.
 

 ¶ 15. The jury also heard conflicting evidence about the deed. During the trial, Pittman admitted signing a timber deed which reflected that Dykes Timber had paid him $5,000 to cut trees on a 1.62 acre tract of land. However, Pittman’s recollection of the deed he thought he had signed and the deed that was offered during trial differed drastically. The deed presented by Dykes Timber at trial reflected a sale of “all merchantable timber” on a 1.62 acre of land without limitation. But Pittman claimed he only granted Dykes Timber permission to cut specific trees on the 1.62 acre parcel. He also contended he was required to be present during the harvesting. The trial judge recognized the discrepancies about the terms of the deed and admitted Pittman’s parol evidence because he found: “it’s not
 
 *927
 
 a foregone conclusion that this is the contract the parties signed which governed their timber transaction. So I’ll let that whole question go to the jury.”
 

 ¶ 16. The jury heard conflicting evidence about the ownership of the timber and whether Pittman had in fact contracted with Dykes Timber to cut “all merchantable timber” on his land and ultimately awarded Pittman $3,200 in damages. It has long been held that “[wjhen the evidence is conflicting, the jury will be the sole judge of the credibility of witnesses and the weight and worth of their testimony.”
 
 Harris v. State,
 
 970 So.2d 151, 156(¶ 20) (Miss.2007) (quoting
 
 Gathright v. State,
 
 380 So.2d 1276, 1278 (Miss.1980)). Based on the conflict between the terms of the deed and testimony elicited at trial, we cannot find that the jury’s verdict was in error or that its award was outrageous or unreasonable.
 

 ¶ 17. Pittman also contends he should have been awarded statutory damages under Mississippi Code Annotated section 95-5-10(2) (Rev.2004) for tree removal. Section 95-5-10(2) provides for statutory damages:
 

 If the cutting down, deadening, destruction or taking away of a tree without the consent of the owner of such tree be done willfully, or in reckless disregard for the rights of the owner of such tree, then in addition to the damages provided for in subsection (1) of this section, the person cutting down, deadening, destroying or taking away such tree shall pay to the owner as a penalty Fifty-five Dollars ($55.00) for every tree so cut down, deadened, destroyed or taken away if such tree is seven (7) inches or more in diameter at a height of eighteen (18) inches above ground level, or Ten Dollars ($10.00) for every such tree so cut down, deadened, destroyed or taken away if such tree is less than seven (7) inches in diameter at a height of eighteen (18) inches above ground level, as established by a preponderance of the evidence. To establish the right of the owner prima facie, to recover under the provisions of this subsection, it shall be required of the owner to show that the defendant ... willfully and knowingly, in conscious disregard for the rights of the owner, cut down, deadened, destroyed or took away such trees.
 

 The trial judge instructed the jury on the burden of proof and required elements under section 95-5-10(2). Though Pittman did produce some photographic evidence of trees he claimed were illegally cut, he mainly relied on the testimony of his neighbor, Clinton Thames; his brother, Rockford; and himself.
 

 ¶ 18. During trial, Thames testified that some pine trees had been cut down on Pittman’s land. However, when Pittman’s attorney questioned Thames about the number of pines that had been cut down, Thames told the jury, “there were a number of pines. I can’t tell you how many because, you know.... I didn’t even want to go out there and look.”
 

 ¶ 19. Rockford also testified that he did not know the “exact number” of trees that were wrongfully cut from the 1.62 acre tract of land, but that it was “quite a few.” We note that neither Thames nor Rockford were able to provide a general number, much less a specific count of the alleged harvested trees.
 

 ¶ 20. Finally, Pittman testified that, “guesstimating,” forty small pine trees, “like 38 oak trees and four big pine trees” were cut by Dykes Timber without his consent. He also alleged that Dykes Timber caused other property damage to his homestead and gave amounts for this damage.
 

 
 *928
 
 ¶ 21. Pittman argues that each witness testified about trees that were illegally cut, and he claims their testimonies were “neither impeached nor rebutted by any other witness or evidence.” However, it is well settled that “decisions as to the weight and credibility of a witness’s statement are the proper province of the jury....”
 
 Durdin v. State,
 
 924 So.2d 562, 565(¶ 12) (Miss.Ct.App.2005) (quoting
 
 Doe v. Stegall,
 
 757 So.2d 201, 205(¶ 12) (Miss.2000)). During Pittman’s testimony, he was reprimanded on numerous occasions by the trial judge for his behavior. Several times Pittman claimed not to remember things because he was “10,000 narcotic pills along.” He also testified that he could not count all of the stumps because Dykes Timber had equipment that “was capable of clipping the trees off with pinchers below the surface of the soil.” Other testimony revealed that Pittman thought Dykes Timber was only authorized to enter his property “by helicopter.” Pittman also testified that he had eaten human flesh. The jury was certainly free to make its own credibility determinations, and it was not required to accept or believe the testimony of Pittman, Rockford, or Thames.
 

 ¶ 22. Even though his attack on the amount of the verdict is procedurally barred, we note that the jury did award Pittman $3,200 in damages. Based on the record before us, we do not find that this award was unreasonably or outrageously low. Accordingly, the trial judge did not err by entering judgment on the jury’s verdict.
 

 II. Claim for General Damages
 

 ¶ 23. Pittman claims he offered sufficient evidence of fraudulent conversion, trespassing, and property destruction, but the trial court erroneously excluded these general damages from the jury’s consideration. However, Pittman does not identify which ruling he refers to when he claims that the court erred by its “refusal to admit plaintiffs evidence of general damages.” Pittman also fails to include legal authority to support this statement.
 

 ¶ 24. Regardless, Pittman’s claim for general damages based on fraud and trespass is procedurally barred because he did not preserve the issue for appeal. “The law is well settled in Mississippi that appellate courts will not put trial courts in error for issues not first presented to the trial court for resolution, and that issues not presented in the trial court cannot be first argued on appeal.”
 
 Purvis v. Barnes,
 
 791 So.2d 199, 202(¶ 7) (Miss.2001) (citation omitted). At trial, Pittman did not even ask the judge to instruct the jury on general damages. Instead, he offered a boilerplate form of the verdict that had originally been provided and withdrawn by Dykes Timber. Also, when the judge asked Pittman’s attorney if this was a property-damage case, the following exchange occurred:
 

 ATTORNEY FOR DYKES TIMBER: Your Honor, we object to this too. This is ... a case governed by a statute, the timber trespass statute.
 

 THE COURT: It is a property damage case; is it not.
 

 ATTORNEY FOR PITTMAN: Yes, it is.
 

 THE COURT: All right. Objection sustained.
 

 Because Pittman did not pursue general damages at trial, we find this issue is without merit.
 

 III. Expert Witness
 

 ¶ 25. Finally, Pittman contends the trial court committed reversible error by preventing Les Shelby, a forester, from giving expert opinion testimony during Pittman’s case-in-chief. “Our well-established standard ... for reviewing the trial
 
 *929
 
 court’s [rulings as to the] admissibility of evidence, including expert testimony, is abuse of discretion.”
 
 Jones v. State,
 
 918 So.2d 1220, 1223(¶ 9) (Miss.2005) (citations omitted). “Unless we can safely say that the trial court abused its judicial discretion in allowing or disallowing evidence so as to prejudice a party in a civil case ... we will affirm the trial court’s ruling.”
 
 Id.
 

 ¶ 26. With only an off-the-record discussion held on this issue, the trial court’s reasoning behind its ruling was not preserved for our review. However, the record reveals that Pittman did not designate any experts during the discovery phase of this matter and did not indicate his desire to call Shelby as a witness prior to trial, as he was required to do under Mississippi Rule of Civil Procedure 26(b)(4)(A)(i).
 

 ¶27. Dykes Timber had listed Shelby as an expert witness, but he did not call Shelby at trial. Pittman tried to call Shelby as an expert witness in his case-in-chief, but the trial court refused his request. Under Rule 26(b)(4)(A)(i), a party must “identify each person whom they expect to call as an expert witness at trial, and to state the subject matter and substance of then* testimony, as well as a summary of the basis for each opinion.”
 
 Warren v. Sandoz Pharms. Corp.,
 
 783 So.2d 735, 742(¶ 15) (Miss.Ct.App.2000). “Procedural rights created under this rule must be taken seriously.”
 
 Harris v. Gen. Host Corp.,
 
 503 So.2d 795, 797 (Miss.1986) (citations omitted). “Our trial judges also have a right to expect compliance with their orders, and when parties and/or attorneys fail to adhere to the provisions of these orders, they should be prepared to do so at their own peril.”
 
 Bowie v. Montfort Jones Mem’l Hosp.,
 
 861 So.2d 1037, 1042(¶ 14) (Miss.2003).
 

 ¶ 28. Had Pittman wished to preserve this issue for appeal, he was required to make a proffer of the witness’s proposed testimony. M.R.E. 103(a)(2). This Court previously held in
 
 Redhead v. Entergy Mississippi, Inc.,
 
 828 So.2d 801, 812-13 (¶¶ 35-37) (Miss.Ct.App.2001), that a party claiming he should have been permitted to call the other party’s expert as an adverse witness during his own case-in-chief was required to make a proffer of the content of the proposed testimony to preserve the issue for appeal. Because Pittman neglected to make a proffer of the proposed expert testimony, the issue was not properly preserved for our review. Therefore, this assignment of error is without merit.
 

 ¶ 29. Accordingly, for the reasons cited herein, the judgment of the trial court is affirmed.
 

 ¶ 30. THE JUDGMENT OF THE CIRCUIT COURT OF SIMPSON COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
 

 KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.